OWENS *v.* STATE.

Opinion delivered June 18, 1923.

1. INDICTMENT AND INFORMATION—SEPARATE COUNTS ALLEGING MEANS OF KILLING—ELECTION.—Where the indictment for murder alleged the killing in different ways in three separate counts, and stated that the crime charged in the second and third counts was identical with that charged in the first count, it was not error to refuse to require the State to elect upon which count defendant would be tried.

2. HOMICIDE—EVIDENCE—SURROUNDING CIRCUMSTANCES.—Where defendant was charged with murder following a disagreement between him and deceased in the presence of other companions during a drunken orgy at defendant's house, the admission of evidence as to a disagreement between defendant and another, after defendant's return from the river, where he had taken deceased, and where it was charged that the killing took place, together with other testimony as to defendant's conduct in connection with the maudlin quarrel which led to the killing or tending to explain defendant's connection with it, was not erroneous.

3. HOMICIDE—PROOF OF VIOLATION OF LIQUOR LAWS.—Where, in a prosecution for murder, it was admitted that defendant was engaged in the illicit manufacture and sale of whiskey, testimony of a witness that he was offered whiskey by defendant, and that he found a still at some distance from defendant's house, was not prejudicial.

4. CRIMINAL LAW—ADMISSION OF TESTIMONY—HARMLESS ERROR.— In a prosecution for murder, where defendant admitted that he had been engaged in the manufacture of liquor, the testimony of a witness that defendant had purchased a large quantity of sugar from him a short time before the killing was not prejudicial.

5. CRIMINAL LAW—ACCOMPLICES—JURY QUESTION.—In a murder trial where witness testified that they went with defendant to

the river and assisted him in disposing of deceased's body only because they were compelled to do so by defendant's threats, the court properly submitted to the jury the question whether such witness were accomplices.

6.   CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence *held* to corroborate testimony of alleged accomplices.

Appeal from Little River Circuit Court; *B. E. Isbell,* Judge; affirmed

*June R. Morrell,* for appellant.

The court erred in not requiring the State to elect upon which of the three counts of the indictment appellant should be tried. Error was also committed in allowing evidence introduced showing appellant was engaged in making and selling intoxicating liquor. This was done by the State before defendant's testimony was introduced or any admission had been made of the fact. 70 Ark. 610; 11 L. R. 1. The verdict is clearly against the weight of the testimony, and the evidence does not corroborate sufficiently the statements of the accomplices to warrant a conviction of murder in the first degree. Certainly the death penalty should not be inflicted on a conviction on any such testimony. The judgment should be reversed, or in any event so modified as only to impose imprisonment for life.

*J. S. Utley,* Attorney General, *John L. Carter* and *Wm. T. Hammock,* Assistants, for appellee.

The evidence relating to appellant's making and selling intoxicating liquor was not unrelated to the offense with which he was charged, but was so interwoven and connected with it that some evidence of it necessarily got into his case in the testimony relating the circumstances about it. Underhill on Evidence, 154, par. 88; 6 Enc. of Evidence, 607; 14 Ark. 555; 10 R. C. L. 930 par. 94, 939 par. 106, 925 par. 87; 62 Ark. 259; 40 Ark. 511; 13 Ark. 236; 82 S. W. (Ky.) 369; 1 Bishop, New Criminal Procedure, § 1125; 168 N. Y. 305. No error was committed in the introduction of this testimony about a fact which was admit-

ted by defendant. No error shown in the introduction of testimony of the so-called "accomplices", who were not in fact accomplices, as the evidence shows. 66 Ark. 16; 105 Ark. 16; 45 Ark. 539; 51 Ark. 189. The jury was properly instructed on the question of accomplices and necessity for corroboration of their testimony in instruction "E," and whether these witnesses were accomplices of defendant was a mixed question of law and fact to be determined by the jury. 43 Ark. 367; 51 Ark. 115; 51 Ark. 189. Even if they were accomplices, and they were not, there is sufficient corroboration of their testimony.

SMITH, J. Appellant was convicted of murder in the first degree, and has been sentenced to be electrocuted. The indictment under which he was tried contained three counts, each charging him with having killed Hugh Throckmorton. The first count alleged that he killed Throckmorton by twisting and breaking his neck with his hands; the second count alleged that appellant killed Throckmorton by striking and beating him with a pistol; and the third count alleged that the manner and means of the commission of the crime were unknown to the grand jury; but both the second and third counts contained the allegation that the crime there charged was identical with that charged in the first count.

The court refused to require the State to elect upon which count appellant would be tried, and an exception was saved to that ruling. No error was committeed in this ruling, as it was not improper to thus charge the offense to meet the uncertainty in the proof and thereby prevent a variance. *Williams* v. *State,* 153 Ark. 289; *Nordin* v. *State,* 143 Ark. 364; *Harris* v. *State,* 140 Ark. 46; *Davidson* v. *State,* 108 Ark. 191; *Grayson* v. *State,* 92 Ark. 413.

According to the testimony on the part of the State, the crime was one of revolting brutality. Appellant was engaged in the manufacture and sale of moonshine whiskey, and was being freely patronized by deceased

and several other neighbors, but he drank with them, and they all became more or less intoxicated. Appellant took charge of the party and ran it to suit himself. He conceived the idea that some one had stolen his money, about two hundred dollars, and he accused Euclid Cooper of having taken it. Cooper had got drunk and had left the scene of the carousal, and appellant ordered Throckmorton to find and bring Cooper to him, and he told Throckmorton that if he did not bring Cooper back he would kill him. Appellant had a controversy with one Jim Parham about a gun which he unsuccessfully attempted to take away from Parham, and then turned to Throckmorton and said: "You go get Cooper, or I'll kill you." Throckmorton protested that he did not know where Cooper was, but appellant marched Throckmorton out of the house and started with him towards the river, and cursed and abused him as he went, and he fired his pistol twice as he marched Throckmorton towards the river. Appellant does not appear to have shot Throckmorton, but the testimony strongly indicates that, after taking Throckmorton to the river bank, appellant beat him with his pistol and left him for dead, and he then returned and found Taylor and Lovewell, who testified that appellant compelled them to go with him to dispose of the body, and the three went back to the place where Throckmorton was lying, and they found he was not dead, but had regained consciousness, and he begged appellant not to kill him, but appellant seized Throckmorton's head and, by turning it and twisting it, broke Throckmorton's neck. Taylor and Lovewell assisted appellant in putting the body in the boat, and they carried it down the river about three-quarters of a mile and dumped it into the stream. Before doing so, appellant removed Throckmorton's coat and had Taylor hang it on a snag in the river, and explained that he was having this done to make it appear, if the body was found, that Throckmorton had in some way drowned himself.

A physician who held a post-mortem testified that Throckmorton was dead when the body was placed in the river, and that the neck was broken. He testified that he could not tell how the neck was broken, but that Throckmorton had not been hung.

Appellant was a witness in his own behalf, and admitted the truth of much of the testimony against him, but denied having assaulted Throckmorton in any manner, and denied that Taylor and Lovewell went with him to the river bank, or that Throckmorton's body was lying thereon, or that it was thrown into the river. Appellant admitted having quarreled with Parham, but testified that it was because Parham, who was his partner in the liquor business and owned half of the money which had been stolen from him, would not give him his gun to be used in searching for Cooper. Appellant's disagreement with Parham was renewed after his return from the river, where he had taken Throckmorton, and the admission of this testimony is assigned as error. We think this testimony was properly admitted, as the entire narrative was necessary to a correct appreciation of what appellant had done and why he did it.

What we have just said disposes of the objection to certain other testimony, all of which related to appellant's conduct in connection with the maudlin quarrel which led to the killing, or tended to explain appellant's connection with it.

Objection was made to the testimony of witnesses Waldrop and Smith, on the ground that their testimony showed that appellant was guilty of another felony, that of operating an illicit still. That fact was not proved as a circumstance unrelated to the crime with which appellant was charged, but was a circumstance mentioned by the witnesses in their testimony. Waldrop testified that he was notified that Throckmorton was reported missing the day after he was killed, and that he joined in the search for the body, and, during his search, went to appellant's house, where he was offered some whis-

key by appellant, and appellant sent away for more whiskey, and on the next morning witness came upon the still, which was about a mile and a quarter from appellant's house. This witness saw deceased's mule, which he had ridden the day he was killed, at appellant's house; and he also saw there two shotguns which the deceased and Cooper had been seen with on the day of the killing. The testimony of the witness Waldrop tends to show that appellant was taking no part in the search, although Throckmorton's mule was at his place and the guns belonging to deceased and Cooper were in his house, and the still was located by the witness while searching for the dead man. Moreover, it was an admitted, undisputed fact that appellant was making and selling liquor. He made no denial of that fact, and the testimony of Waldrop and Smith was merely cumulative of that of other witnesses, whose narrative of the incidents leading up to the killing necessarily involved the statement that appellant was making and selling whiskey.

W. C. Mize was called as a witness for appellant, and admitted, in his cross-examination, that appellant had bought at his store three hundred pounds of sugar a short time before Throckmorton was killed. It is no doubt true, as counsel for appellant insists, that the purpose of this cross-examination was to show that appellant was engaged in the manufacture of liquor; but, as we have said, this was one of the undisputed facts in the case, and we think no prejudicial error was committed in not excluding that testimony. *Maddox* v. *State*, 155 Ark. 19.

Appellant insists that the testimony of Taylor and Lovewell, if true, shows that they were accomplices, and that there was no corroboration of their testimony. Those witnesses testified that they went with appellant to the river and assisted him in disposing of the body only because they were required to do so, as appellant was armed with two pistols, and told them he

would kill them if they did not assist him, and that he would kill them if they ever told what they had seen. The court submitted to the jury the question whether Taylor and Lovewell were accomplices or not, and gave a correct instruction on the subject of their corroboration if they were found to be accomplices. If the story told by these witnesses is accepted as true, they were not accomplices, and no corroboration of their testimony would have been required to support a conviction. But there was corroboration of their testimony. Other witnesses saw appellant march Throckmorton towards the river and heard him curse and abuse him and threaten to kill him if he did not produce Cooper, and in a short time appellant returned without either Throckmorton or Cooper. The sheriff of the county testified that, on the afternoon when the body was found, appellant told him that it would be found about twenty or thirty steps down the river, directly across the river from where the coat was hung on the snag in the river, and the body was found at about that place.

Upon a consideration of the whole case we are of opinion that no error prejudicial to appellant was committed, and that the testimony is legally sufficient to support the verdict, and the judgment must therefore be affirmed.