STUART *v.* STATE.

4731                                           257 S. W. 2d 372

Opinion delivered May 4, 1953.

*Shaver, Tackett & Jones,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp S. Thomas* and *James L. Sloan,* Assistant Attorneys General, for appellee.

J. SEABORN HOLT, J. A jury found appellant, Dr. C. E. Stuart, guilty on an information charging him with the "crime of threatening an officer by drawing a gun committed as follows, to-wit: The said defendant on the 3rd day of September, 1952, in Howard County, Arkansas, did unlawfully, wilfully and feloniously resist the execution of criminal process by threatening or by actually drawing a pistol and/or a gun upon Harold Bell, an officer and trooper with the Arkansas State Police Dept., etc.," and fixed his punishment at a term of one year in the State Penitentiary. From the judgment is this appeal.

About midnight on September 3, 1952, Mr. Bell, a State Police Officer, accompanied by Jake Hooker, City Marshal of Mineral Springs, while cruising the highway near Mineral Springs, observed appellant and his son, Carroll, parked in a car. He passed this car, then turned about, shined his spotlight on it, and came toward the parked automobile, at which time Dr. Stuart "took off down the road." Bell followed and shortly thereafter fired his pistol into the air and then at the tires of the fleeing car. The chase continued for about fourteen miles, ending at the Doctor's home in Nashville. Bell testified that after he had stopped at the Stuart home, he went up to the car and said, "you are driving under the influence," and told Stuart to get out. As he opened the door of the Stuart car, Stuart hit him with his fist;

then seized his steering wheel and held on, making it necessary for Bell to pull Stuart out of the car. As Bell was trying to force Stuart to the police car, Hooker cried out a warning that the boy in the car had a gun. Bell let Stuart go, ran around and got Hooker's gun and put it on the boy, telling him to "drop that gun." Instead of complying, the boy backed up the porch steps. Meanwhile, Stuart had run into the house and had returned with a shotgun, which he pointed at Bell. Simultaneously, he cursed and threatened Bell, saying if he did not get out he was going to fill him full of buckshot. Bell then got in his car and drove away. He had no warrant or process for appellant's arrest. Dr. Stuart was not arrested until the following day, at about 11 o'clock A. M.

For reversal, among twenty-seven assignments of alleged errors in the trial of the case, is appellant's assignment that the court erred in permitting the State to introduce testimony over his objections and exceptions to the effect that Dr. Stuart was "drinking" and "might have been resisting arrest on the day following the night occasioning the charge for threatening an officer," and also testimony concerning his actions at the Hale Drug Store on this same day "following the night occasioning the charge" against him.

The record shows that on September 4th, around 11 o'clock A. M., the day following the night of September 3, 1952, on which Dr. Stuart is alleged to have been drinking and resisted arrest by Officer Bell, that Sheriff Chesshir and Travis Ward, a State patrolman, then with warrant of arrest in their possession, arrested Dr. Stuart at the Hale Drug Store in Nashville. In the testimony of Officer Ward, the record reflects: "Did you observe him at the time he was placed under arrest? A. Yes. . . . Q. Tell the jury what condition Doc Stuart was in that morning relative to being drunk or sober. A. He was pretty drunk. . . . Q. Tell what took place at Hale & Hale's. A. We went in the drug store. The sheriff had warrants for Stuart—*Mr. Tackett*: I will ask to make objection to this testimony, and save exception to the rul-

ing of the Court. *The Court*: Overruled. . . . A. (Cont'd.) We went in and Sheriff Chesshir read the warrant and showed it to Dr. Stuart, and he asked me if I was Bell. I said I wasn't, that my name was Ward. He shook hands with me. Sheriff Chesshir told him he had the warrants, and would have to arrest him and he would have to make bond. He told him, 'Come on, let's go.' He grabbed hold of the stove and we pried him loose and took him out and put him in the car and carried him to the jail.''

The Prosecuting Attorney testified that at the time of appellant's arrest at the Hale Drug Store ''in my opinion, he was under the influence of liquor.''

We have concluded that the trial court erred in admitting the above testimony over appellant's objections. We think the actions and behavior of Dr. Stuart on the day following his alleged offense could have no bearing on his guilt of the crime for which he was being tried. Such evidence could only result in tending to prejudice the minds of the jury against him.

In the case of *Cross* v. *State,* 200 Ark. 1165, 143 S. W. 2d 530, evidence was offered over objections of defendant to show that the accused was in an intoxicated condition several hours after the commission of the crime charged. The trial court held this testimony incompetent and so charged the jury. We there held: (Headnote 6) ''Criminal Law. — Appellant's objection to the testimony of the arresting officers to the effect that she was in an intoxicated condition at the time of the arrest could not bring a reversal of the judgment where the court admonished the jury 'not to consider the question and answer,' since the court did all it could well do to eliminate all prejudice from the minds of the jury.''

Conversely, since here the trial court, over appellant's objections and exceptions, refused to admonish the jury not to consider the above testimony, reversible error resulted.

Since we are reversing the judgment and remanding the case, we point out, in case of another trial, that appellant was charged and tried under the wrong statute for a crime not warranted by the evidence. The court instructed the jury that he was charged with a felony under the provisions of § 41-2803, Ark. Stats. 1947 (Act 59, § 12, page 214 of an act of the Legislature of 1868), which provides: "Threatening officer—Drawing Gun—Penalty.—Every person who shall resist the execution of any civil or criminal process by threatening or by actually drawing a pistol, gun or other deadly weapon upon the sheriff or other officer authorized to execute such process, shall, upon conviction thereof, be imprisoned in the penitentiary for a term not less than one [1] nor more than five [5] years."

Section 13 of that act (now § 41-4001, Ark. Stats. 1947) provides: "Every person and the aiders and abetters of every person who shall draw a pistol, gun or any other deadly weapon upon any other person . . . for the purpose of frightening or intimidating him from doing any lawful act, when such person drawing said pistol or gun or other deadly weapon is not justified in self-defense for so doing, shall be deemed guilty of a misdemeanor and upon conviction shall be fined in a sum not less than five hundred dollars [$500.00] nor more than one thousand dollars [$1,000.00] and shall be imprisoned in the county jail for twelve [12] months."

Section 41-2801, Ark. Stats. 1947 (Rev. Stats. of Ark., ch. 44, page 268, § 1) provides: "If any person shall knowingly and wilfully *obstruct or resist any sheriff* or other ministerial officer, in the service or execution of, or in the attempt to serve or execute any writ, warrant or process, original or judicial, *in discharge of any official duty,* in case of felony or other case, civil or criminal, or in the service of any order or rule of court, *in any case whatever,* he shall be deemed guilty of a misdemeanor, and on conviction shall be fined in any sum not less than fifty dollars [$50.00], and may also be imprisoned not exceeding six [6] months."

Section 41-2802 (§ 2. Rev. Stats. above) provides: "Every person who shall assault, beat or wound any officer while engaged in the service or execution of, or in attempting to serve or execute, any writ, warrant or process, original or judicial, or any order or rule of court, *or while engaged in the discharge of any official duty,* shall be deemed guilty of a misdemeanor, and on conviction shall be punished as is prescribed in the last preceding section."

We think it was the clear intention of the Legislature, and we so hold, that § 41-2803, above, under which appellant was charged should apply only where a person resists, by threats or using a gun, *the execution of a warrant or process of arrest by an officer having such warrant or process in his possession at the time.* Here, it is undisputed that Bell had no warrant to arrest appellant on the night of September 3rd and under the facts here presented, appellant could be charged with no greater offense than a misdemeanor, as provided under §§ 41-2801-02 or 41-4001, above.

The offense for *resisting execution* of criminal or civil process by threatening or by drawing a gun on the officer armed with the warrant of arrest is made a felony and the penalty imposed is that of imprisonment in the penitentiary for a period of one to five years (§ 41-2803). The offense of one, without using a gun, *resisting an officer* in the service of process or in the discharge of any official duty (§§ 41-2801 and 41-2802, above) is made a misdemeanor and the penalty not less than a $50 fine and the defendant may be imprisoned not exceeding six months, and under § 41-4001, one who draws a pistol or deadly weapon to frighten or intimidate any one from doing any legal act, is guilty of a misdemeanor and shall be fined not less than $500 or more than $1,000 and imprisoned in the County Jail for twelve months.

As indicated, we think it was the intention of the Legislature to make it a more serious offense for the person to *resist the execution of a criminal process or warrant in the hands of the arresting officer at the time*

by threats or the use of a pistol or deadly weapon, than where it appears, as here, that appellant was not resisting the execution of process in Bell's hands, but was *resisting Officer Bell*, while he was acting without any warrant. In the former case, the offense is raised to the grade of a felony, in the latter a misdemeanor only.

The rule is well settled that "no case should be brought within a penal statute unless completely within its words, and every reasonable doubt about the meaning of the language should be resolved in favor of the accused," *Casey* v. *State*, 53 Ark. 334, 14 S. W. 90.

". . . Penal statutes must be strictly construed; . . . nothing will be taken as intended which is not clearly expressed; and . . . all doubts will be resolved in favor of the defendant in construing such statutes," *State* v. *Arkadelphia Lumber Company*, 70 Ark. 329, 67 S. W. 1011.

Accordingly, the judgment is reversed and the cause remanded for a new trial.