Cox *v.* State

5195                                   405 S.W. 2nd 937

Opinion delivered May 23, 1966

[Rehearing denied September 19, 1966.]

*W. B. Howard, Jack Segars,* for appellant.

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Atty. General, for appellee.

George Rose Smith, Justice. Charged with rape, the appellant was convicted of assault with intent to rape and sentenced to imprisonment for twenty-one years. His contentions for reversal relate only to the admissibility of a tape-recorded confession made shortly after he was taken into custody.

We need state only such facts as are pertinent to the appeal. On the afternoon of May 9, 1965, the prosecutrix, a nineteen-year-old girl, took her father's car to a service station in Paragould to have the brakes checked. Cox, the accused, aged twenty, was working at the station. He got into the car with the prosecutrix and drove a short distance out of town to test the brakes. In their testimony both witnesses agree that Cox stopped the car on a back road and that an act of sexual intercourse occurred. Whether Cox accomplished his purpose by force or with the girl's consent was the principal point of dispute in their testimony. The jury's verdict has settled that controversy.

Upon returning home the prosecutrix reported the matter to her parents, identifying Cox as her assailant. He was arrested at his home at about six o'clock that evening, perhaps a little later. For a short time—probably less than an hour—Cox was held in jail. There is no contention that he was physically mistreated.

At about 7:30 Cox was taken to the office of Howard Mayes, a deputy prosecuting attorney, where he was questioned by Mayes, Sheriff Woodrow Davidson, and Police Chief Lloyd Hill. Mayes did not testify in the court below, doubtless because he was trying the case for the prosecution. Officers Davidson and Hill testified that Cox was warned "three or four times" or "numerous times" that he was not required to make a statement and that anything he said might be used against him in court. Cox denies having received such a warning, but in this respect he is contradicted by the tape recording that was made.

The only serious question is whether Cox, in the language of the Supreme Court, "intelligently and knowingly" waived his right to counsel. *Escobedo* v. *Illinois,* 378 U. S. 464 (1964). Officer Davidson testified that Cox was told: "You have a right to call a lawyer. There is a phone if you want to call one." Davidson quoted Cox as having answered that "he didn't want a lawyer, wasn't in any trouble." Officer Hill's testimony was much to the same effect: "I told him he was arrested for rape, and he needed a lawyer, 'and there is the phone if you want to call one.' " Cox's reply was, "I don't want a lawyer."

Cox disputed the officers' statements, insisting that he was not told that he had a right to talk to a lawyer. On cross examination, when asked why he at first tried to mislead the sheriff by saying that he did not even leave the service station with the prosecutrix, Cox replied, without explanation, "Because I wanted to talk to a lawyer."

Before the trial the accused was sent to the State Hospital for a determination of his mental condition. The examining physicians found that he was a mild mental defective, with an I.Q. of 70 or 71. He was considered to be without psychosis and to be legally responsible for his conduct. Other testimony shows that Cox reached the seventh grade in school, although he may have been promoted from the sixth grade without having made a passing mark. At the time of the offense he was employed at the service station and was living with his second wife and his only child.

There can be no doubt, under the language in *Escobedo* v. *Illinois, supra,* that in the case at bar the officers' investigation had reached that accusatory stage at which Cox had the right to consult an attorney. The pivotal issue is that of waiver. Upon that point this is counsel's position, as stated in their brief: "It is ridiculous to speculate as to whether or not a 'mild mental defective' can 'intelligently' and 'competently' waive counsel. A mere recitation of such a proposition demonstrates its absurdity. It is a contradiction in terms to speak of a mental defective exercising intelligence in such a complicated matter."

We are not convinced that we should overrule the trial court's judgment in the matter. The report made by the staff of the State Hospital must be considered along with the other evidence in the case. Cox was earning his own living at the time he committed the offense in question. He appears to have been able to support his wife and child. There is no direct indication that anything in his appearance or in his behavior when interrogated should have put the officers on notice that something more than a clear statement of his rights was called for. The record of Cox's testimony at the trial impresses us as that of a person who understood his situation and the questions he was called upon to answer. Our impression might be even stronger if we shared the trial judge's opportunity to observe all the witnesses in the courtroom.

Counsel for the appellant rely with much confidence upon our recent decision in *Smith* v. *State,* 240 Ark. 726, 401 S. W. 2d 749 (1966), where, in reversing a conviction upon another ground, we held that upon the record made at the first trial the accused's confession should have been rejected under the *Escobedo* rule. There, however, the controlling consideration was not so much waiver as the officers' failure to bring home to the accused his absolute right to counsel. At most he was told that he "needed" counsel; there was hardly any intimation that he was entitled to such assistance or that he would be permitted to seek it. There could be no finding of an intelligent waiver on the part of one who did not understand his rights.

In attempting to abide by the *Escobedo* decision we share the difficulty experienced by other courts, that of deciding the extent to which the language of the court's opinion is to be applied to fact situations not so favorable to the accused as that which confronted Danny Escobedo. In the case at bar we suggested during the oral argument that the question might be held in abeyance until the Supreme Court clarifies the scope of the *Escobedo* holding, as it intends to do in five cases that were taken under advisement last fall. We readily understand why counsel did not feel at liberty to acquiesce in a postponement that might delay their client's possible release from the state penitentiary. In the circumstances we do not think that our decision should be deferred.

We find no merit in the appellant's second contention, that the tape-recorded confession was in fact involuntary. Indeed, counsel candidly admit that this argument is made only to preserve the possibility that' the point may be urged in the future in the federal courts.

Affirmed.