JOHNNY HARPER *v.* STATE OF ARKANSAS

5528                                    462 S. W. 2d 847

Opinion delivered February 8, 1971

*Walker, Kaplan, Lavey & Mays,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. This is a companion case to *Eddie (Tate) Morris* v. *State,* opinion delivered this day. Although the appellant and Morris (known as Tate) were charged and tried separately for the alleged crime of robbery, the facts relating to their joint par-

ticipation are identical. Since the facts are fully detailed in *Morris,* it is unnecessary to again relate them. A jury assessed appellant's sentence at seven years with a minimum of two years and four months without parole in the State Penitentiary, and from a judgment on that verdict comes this appeal.

Appellant first contends for reversal that it was error when the trial court refused to permit appellant "to adduce evidence from the jury commissione s and the panel of petit jurors in support of its motion to quash the jury panel." This motion was based upon allegations that the February 1970 venire was not a reasonable cross section of the community. We find no merit in this contention. In response to this motion the trial court offered to make available to the appellant a transcript of the court's instructions which were given as guidelines to the jury commissioners and to permit the appellant to inquire of the jury commissioners if they had followed the court's instructions in the selection of the master jury list (800). The court commented that it had specifically instructed the jury commissioners to "disregard race, creed, color, station in life, age and sex." The court additionally offered that: "* * * any proof that you have in any of these things will be permitted, and if any of these errors exist that you allege here you may put in your record * * *." Appellant rejected these offers and persisted in his assertion that he was entitled to question the jury commissioners and the jury panel on such specifics as economic, occupational, racial, social, political, age, and geographic considerations to determine if the jury panel constituted or was representative of a reasonable cross section of the county as is constitutionally required.

The court remarked to appellant's counsel that by looking at the list drawn at random from the jury wheel: "It is discernible * * * that the jury commission had followed the instructions of the court, and that they had selected a cross section of the different races in the county, of the different age groups, of the different people of different economic statuses. * * * [Y]ou were present when we drew the jury, and you took a

list of them at that time, of this panel, so you have had ample opportunity to check that list, and I think that in checking it you will find that it is a cross section of all of these things that you have alleged here. * * * I think that is perfect evidence that the jury commission followed the instructions of this court, and that we do have a cross section, and that there was no discrimination."

In selecting the venire for the February 1970 term the provisions of our new "jury wheel" statute were followed. Ark. Stat. Ann. § 39-201 et seq. (Supp. 1969). It appears from the record that a list of 800 was selected by the commissioners from approximately 15,000 electors in the county and that appellant's attorney was present when 60 were drawn at random in order to get a panel of at least 36 prospective jurors, 26 of whom had never served on a jury. (Pertinent data relating to county population, the race ratio as well as the qualified electorate ratio, and the number of welfare recipients are detailed in *Morris* v. *State, supra.*) The record here reflects that the membership of the trial jury, which convicted appellant who is an 18-year-old Negro, was selected from this panel. The trial jury consisted of an industrial worker and member of a local union; an hourly-paid employee and union member; a salaried mechanic; a salaried manager of a tire service store; a yard man; a farmer who rents 2,200 acres of land and employs six men; a retired woman school teacher; a farmer who owns and farms 200 acres of land; a salaried car salesman; a part owner of a lumber company which employs 60 workers; an hourly paid draftsman for an electronic concern; and an hourly paid truck driver.

The voir dire examination of the prospective jurors does not reflect what proportion, if any, of the jury panel was of the same race as appellant. However, as we understand the trial court, other jury panels drawn at random from this master list were biracial and one contained as many as 50% Negroes. In the selection of the trial jury the appellant was permitted to conduct an exhaustive and thorough voir dire examination of the prospective jurors which were drawn at random

from the "jury wheel." Appellant has not demonstrated that there was any discrimination in the jury selection or that he was deprived of a jury which represented a reasonable cross section of the community. His motion to quash did not entitle him to conduct a "fishing expedition"; and, in the circumstances, the court was correct in denying his motion.

The appellant insists that the court erred in overruling his objection to the State's introducing into evidence currency totaling $59.00, a pocketknife, and a brown paper sack containing some silver. We do not agree. The victim testified that the money from his cash register was missing after the robbery and that he observed appellant "put something in" a brown paper sack after he told him how to open the cash register. A brown paper sack containing some change was found in the car when appellant and his accomplices were apprehended and, later $59.00 in currency was found hidden on the person of one of these accomplices. The knife was found on the premises just outside the door of the building where the robbery occurred and there was evidence of bloodstains on it. The victim was stabbed several times during the robbery. He observed appellant's accomplice with a knife. The exhibits were properly admitted into evidence. *Morris v. State, supra.*

We find no merit in appellant's assertion that the court erred in reading the information to the jurors and mentioning there were "other persons" involved in the alleged offense. Appellant has not demonstrated how this was prejudicial. The trial court admonished the jury, as appellant requested, not to be concerned with the results of any trial of another person.

Nor do we find error in the refusal of the trial court to give appellant's instruction pertaining to good character. There was no evidence offered by the appellant as to his general reputation in the community. His father merely testified that his son had never been convicted of a crime and this was the first time he had ever been in trouble. This was not equivalent to evidence of general reputation in the community in which

appellant resided and, therefore, was insufficient evidence to warrant such an instruction. *Henson* v. *State,* 239 Ark. 727, 393 S. W. 2d 856 (1956); *State* v. *Williamson,* 78 S. E. 2d 763 (N. C. 1953); *Monk* v. *State,* 105 Ark. 12 (1912). Appellant's requested instruction was properly refused since it was not supported by the evidence. *Powell* v. *State,* 231 Ark. 737, 332 S. W. 2d 483 (1960).

Appellant asserts that the trial court erred by refusing to grant appellant's motion to have his sentence run from the date he was detained, August 14, 1969, until the time of his trial. We cannot agree. See *Kimble* v. *State,* 246 Ark. 407, 438 S. W. 2d 705.

Appellant's other contentions for reversal are decided adversely in the companion case, *Morris* v. *State, supra.*

Affirmed.