732

Alton YARBROUGH, James SPENCER and
Alonzo ROBINS *v.* STATE of Arkansas

CR 74-51                              520 S.W. 2d 227

Opinion delivered March 3, 1975

Appellants *Pro Se.*

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. The appellants Yarbrough, Spencer and Robins were convicted at a jury trial on three separate counts of possessing forged instruments. Spencer was sentenced to the penitentiary for three years on each of the three counts. Yarbrough and Robins were sentenced to the penitentiary for seven and one-half years on each count. The sentences as to each appellant were to run consecutively, with one-third of the time to be served before parole. The court appointed attorneys did an excellent job in representing the appellants in the trial court but the evidence as to the appellants' guilt was overwhelming.

On appeal to this court the appellants have refused the services of the court appointed counsel and have attempted to represent themselves *pro se* and, in doing so, they have submitted separate handwritten or handprinted briefs which tax to the limit our visual endurance. Each appellant has separately designated several points on which he relies for reversal and in several instances the same point is designated by each appellant. Their designated points of assigned error will be discussed in order following statement of the facts as evidenced by the record.

The facts as revealed by the record are simply these: On July 12, 1973, the appellant Spencer, representing himself to be Donald E. Kelly, presented for payment at a branch of the Worthen Bank and Trust Company a printed check form No. 671 on the property account of Harry E. McDermott, Jr., and William B. DeYampert. The check was filled in for $500; signed "Wm. B. DeYampert," and made payable to Donald E. Kelly. For identification in cashing the check Spencer produced a temporary Arkansas driving permit made out to Donald E. Kelly, and also produced a Social Security card made out to Donald Edward Kelly. The check was cashed by Worthen but as a matter of precaution on a check in such

large amount, the assistant bank manager took two photographs of Spencer and followed him from the bank in an effort to obtain the license number and description of any automobile in which he might leave the premises. Spencer is a black man and was observed to have hesitated beside an automobile occupied by two other black men as he walked by the automobile parked on the parking lot. No one testified to actually seeing Spencer get into an automobile but a call to McDermott's office verified the forgery and the police were advised of the transaction.

The police officers were given a description of Spencer together with a description and the license number of the automobile in which he was thought to have left the bank premises, and the automobile was soon located on a motel parking lot. The officers learned from the motel clerk that the owner of the automobile was registered under the name of Alonzo Robins in Room 312 of the motel, and that another black male, and possibly a third, were also occupying the room. The officers went to the motel room; heard a television playing inside the room, but obtained no response to their knock on the door. They then obtained a passkey and entered the room in search of the owner of the automobile. No one was in the room but as they returned to the motel lobby, Robins and Spencer were getting on the elevator as the officers got off of it and Yarbrough was standing nearby. The officers ascertained from Robins that he occupied Room 312 and owned the automobile in the parking lot; they ascertained from Spencer that he was occupying the room with Robins and also ascertained from Yarbrough that he also had a key to Room 312.

All three appellants were placed under arrest. Robins gave consent to a search of the motel room and also his automobile. A search of the room revealed a typewriter and in a suitcase in the room the officers found a check protecting device; and, in a brown envelope in the suitcase, they found nine consecutively numbered Worthen Bank and Trust Company printed check forms on the property account of Harry E. McDermott, Jr., and William B. DeYampert, and three of these check forms were filled out. All three checks were dated July 12, 1973. They were made payable to Donald E. Kelly in

the amounts of $500, $360 and $500 respectively, and were checks identified as having come from the back part of a checkbook kept in the Little Rock office of Harry E. McDermott, Jr., and William B. DeYampert. They were signed "Wm. B. DeYampert" and the fact of forgery as to the three checks filled out is not questioned. Each of the three appellants had on his person a temporary Arkansas driving permit made out to "Kelly, Donald Edward" and signed, in space for signature of permitee, "Donald E. Kelly." As already stated, the one Social Security card made to "Donald Edward Kelly" and signed "Donald E. Kelly" was found on the person of Spencer.

One felony information containing three counts was filed against the three appellants and as to form and substance, it reads as follows:

"Comes Lee A. Munson, Prosecuting Attorney within and for the Sixth Judicial District of Arkansas, and in the name, by the authority, and on behalf of the State of Arkansas information gives accusing ALTON YARBROUGH, JAMES L. SPENCER, and ALONZO ROBINS A/K/A EDWARD L. HILTON of the crime of violating Ark. Stat. Ann. § 41-1811, POSSESSION OF COUNTERFEIT INSTRUMENTS, committed as follows, to-wit: The said defendants did in Pulaski County, Arkansas, unlawfully, feloniously, and fraudulently:

POSSESSION OF COUNTERFEIT INSTRUMENT: On or about the 12th day of July, 1973, have in their possession an altered check, said check being No. 680, drawn on Worthen Bank and Trust Company on the property account of Harry E. McDermott, Jr. and Wm. B. DeYampert in the amount of $500.00, said alteration being that the check was forged, with the unlawful and felonious intent then and there to pass or utter said check as true and genuine."

Separate counts two and three were in the identical language of count one except as to check numbers and the $360 face amount of the check in count two. The information concluded as follows:

"The said ALTON YARBROUGH has previously been convicted of at least one felony, and consequently his sentence should be increased pursuant to Ark. Stat. Ann. § 43-2328.

The said ALONZO ROBINS A/K/A EDWARD L. HILTON has previously been convicted of at least two felonies, and consequently his sentence should be increased pursuant to Ark. Stat. Ann. § 43-2328."

Ark. Stat. Ann. § 41-1811 (Repl. 1964), under which the three counts were laid, reads as follows:

"Whoever shall fraudulently keep in his possession or conceal the counterfeit resemblance or imitation of any bank bill, note, check, or draft, or any instrument which circulates as currency, of any corporation, company or person that exists, or may exist, whether such bill, note, check, draft or instrument be complete and filled up, or otherwise, or shall fraudulently keep in possession or conceal any fictitious instrument, purporting to be a bank bill, note, check or draft of any corporation, company or person, whether the same be filled up and complete or not, though no such corporation, company or person exist, or shall fraudulently alter or erase any genuine bill, note, draft, check or instrument that circulates as currency, of any corporation, company or person, or shall fraudulently keep in possession or conceal any such bill, note, draft, check or instrument that shall be so altered or erased, or shall fraudulently buy, pay or tender in payment, alter or offer to alter, pass or offer to pass, or assist, or be concerned in fraudulently buying, paying, or tendering in payment, altering or passing any such bill, note, draft, check or instrument that may be so altered or erased, on conviction, shall be imprisoned in the penitentiary not less than three [3] nor more than ten [10] years."

The jury returned separate verdicts of guilty as to each of the three counts and as to each of the appellants. The trial court instructed the jury that the state had failed to prove previous convictions as alleged in the information. The jury then returned its verdicts assessing separate penalties on each count for each appellant upon which the judgment was

entered as already stated. As to Spencer, the jury recommended that the three sentences run concurrently but the trial court did not follow the jury's recommendation.

We now turn to the points relied on, most of which merit little discussion. All three appellants contend that the arresting officer, Ronnie Gatewood, committed perjury in testifying to the legality of the arrest. This assignment is apparently directed at conflict in the testimony of Detective Gatewood and that of the branch manager Tollett, as to who gave the description and license number of the automobile to Detective Gatewood by telephone. We consider it immaterial whether Mr. Tollett or some other person gave Detective Gatewood the description and license number of the automobile involved. Furthermore, if such conflict in testimony had been material, it would have been a question for the jury to determine which witness was telling the truth. We find no merit to this contention.

Spencer and Robins contend that the trial court erred when it failed to excuse the jury *panel* because of a prejudicial statement by Mr. Sommers, one of the panel members, during voir dire examination in the presence of the other members. Mr. Sommers stated on voir dire that he did his banking at the branch bank involved and that he was well acquainted with the teller and officers of the bank. He was excused from jury service and we find no prejudicial error in this assignment.

Spencer contends that the trial court erred when it failed to grant his motion to suppress as evidence the identification taken from his billford. The appellant's billfold was searched incidental to his arrest and the identification he used in uttering the forged check was found therein. We find no merit to this contention.

Spencer contends that the trial court erred when it admitted into evidence the statement taken from the appellant. The only statement taken from the appellant pertained to his identity and the fact that he was occupying the same motel room with the appellant Robins. We find no merit to this contention.

Spencer and Yarbrough contend that the trial court erred when it admitted into evidence testimony of the alleged felony at the Worthen Bank and the paper taken from the automobile. Spencer was the one who cashed the forged check at the bank and he was charged with possession of almost identical forged checks all out of the same checkbook. No competent attorney would have made such contention. We find no merit to this contention for more reasons than we care to enumerate. As to the paper taken from the automobile, that was a blank piece of white paper lying on the dashboard of the automobile and it bore the sample imprint from a check protector later identified as the same one used in forging the checks. As already stated, Robins owned the automobile and the paper was taken from it after he gave his consent to search his room and the automobile. Furthermore, the officers testified that the paper was lying on the dashboard of the automobile in full view; that it bore markings similar to other samples they had in their possession and, that they observed it from outside the automobile even before it was taken therefrom under the consent granted by Robins. We find no merit to this contention.

All three appellants contend that the evidence is insufficient to support the verdict of the jury. Again, no competent attorney would pursue such contention in the face of the record in this case. The evidence is not only sufficient to support the verdict of the jury, it is overwhelming as to the guilt of the appellants on the possession of the forged instruments involved; it is overwhelming as to their design, intent, and the course of their conduct, in embarking upon the usually short career of obtaining money by forgery. We find no merit to this contention.

Yarbrough contends that the trial court erred in admitting into evidence a motel key and statements attributed to him because he was illegally arrested and interrogated without being advised of his right to remain silent. Yarbrough's only statements pertained to his identity and association with the other two appellants in the motel and there was undenied testimony that he was advised of his constitutional right to remain silent. The motel key was to Robins' room at the motel, it was taken from Yarbrough in-

cidental to his arrest, and we conclude it was admissible in evidence.

Yarbrough and Robins contend that the trial court erred by admitting into evidence counterfeit checks obtained from motel Room 312 because they were the illegal fruit of a warrantless search and, as Yarbrough contends, on the alleged consent of a codefendant. From what we have already said, we find no merit to this contention.

Robins contends that he was deprived of the adequate and effective assistance of counsel. It is difficult to understand this contention. As already stated, the defense counsel did an excellent job of defending the appellants and preserving the record in this case. It is difficult to understand just how effective the appellants could expect their counsel to be in the light of the forged checks found in their possession, their forged instruments of identity to conform to the forged checks and vice versa, and the excellent pictures of Spencer as he appeared to pocket the proceeds from one of the forged checks he had just uttered. We find no merit to this contention.

Robins also contends that the search of the automobile was illegal. We have already covered this point and find no merit in it. Robins also contends that he was not given credit for time spent in pretrial confinement. The evidence is to the effect that Robins was indigent and an attorney was appointed for him on that account, but there is no evidence that his indigency was the reason for his failure to make bond. The bond was set at only $1,500 and the record suggests that the reason he was unable to make bond was because of inability to get bondsmen to take a chance on him appearing for trial since he was an out of state resident and a number of detainers from other jurisdictions had been lodged against him. We find no merit to this assignment.

We now come to two assignments which we feel do merit more discussion. Robins contends that the lower court erred in not declaring a mistrial when the state offered proof of appellant's prior convictions which fail to show that appellant was represented by counsel, or that he waived counsel; and, Yarbrough contends that the trial court erred

in presenting appellant's prior convictions at the punishment stage of the trial, and that it had a prejudicial effect upon the jury.

From the record before us it appears the state's requested instruction No. 7 recited the law as set out in § 41-1811, *supra*, and ended with the words "on conviction, shall be imprisoned in the penitentiary not less than three (3) years nor more than ten (10) years." At this point the record appears as follows:

"MR. ACHOR: Your Honor, will No. 7 be amended to eliminate 'shall be imprisoned in the penitentiary not less than three nor ——'

THE COURT: (Interposing) You're right. Eliminate, 'on conviction shall be imprisoned,' this will be guilty or not guilty. All right."

The court then gave instruction No. 7, as amended, setting forth the statute eliminating the penalty provision and then the court gave the court's instruction No. 10 as follows:

"As to each count in the Information previously read to you and as to each defendant,

if you find the defendant guilty, you will say: 'We, the jury, find the defendant Guilty as charged in the Information.'

On the other hand, if you find the defendant, as to each count, not guilty, or have a reasonable doubt as to his guilt, you will say: 'We, the Jury, find the defendant not Guilty.'

In any event, your verdict must be unanimous and signed by one of your members as foreman."

Apparently after the jury returned its verdict of guilty on all counts, the court dismissed the jury to return at a quarter of two. When the jury returned, the court instructed the jury as follows:

"The Information further alleges that the defendant Alton Yarbrough, has previously been convicted of at least one felony and, consequently, his sentence should be increased pursuant to Arkansas Stats. Annotated 43-2328. It further alleged that the said Alonzo Robins, also known as Edward L. Hilton, has previously been convicted of at least two felonies and, consequently, his sentence should be increased pursuant to Ark. Stats. Annotated 43-2328, which is the Arkanaas Habitual Criminal Act."

The trial judge then directed the prosecuting attorney to proceed, but then requested the attorneys to approach the bench where a conference was had out of the hearing of the jury or the reporter. Detective Gatewood was then called by the state and identified a Michigan driver's license found in the motel room. It had been issued to Edward L. Hilton and was signed "Edward L. Hilton" but it bore the photograph of the appellant Robins.

Certificates of prior convictions of "Edward Lee Hilton" and Alton Yarbrough in the State of Michigan were then offered in evidence, but were objected to on the ground that they did not show representation by an attorney or waivers of attorney. The trial court refused the certificates in evidence and denied the appellants' motions for mistrial. The court then instructed the jury as follows:

"There has been a failure of proof in regard to the Habitual Offender Act. You're not to consider the allegation. You're to presume that — You're instructed that for the purpose of this trial and for any other purpose, none of these defendants have been convicted of a prior offense. That's a question that's not in issue. You have previously found the defendants guilty of the offense, now it only remains for you to set the punishment . . . . "

The court then directed the reporter to write up the penalty instructions.

As we view the record, the trial court simply directed a

verdict for the appellants Yarbrough and Robins on the habitual offender charges. The record is not perfectly clear as to how much of the bar-side discussion pertaining to the certificates of prior convictions was within the hearing of the jury, but the appellants argue that prejudice was shown by the jury verdict of seven and one-half years for Yarbrough and Robins and only three years on each count for Spencer, with the recommendation that his sentences run concurrently. We are unable to say as a matter of law that prejudice was demonstrated in this case. In the first place the evidence would have sustained the maximum sentence of 10 years in each case.

It must be remembered that Robins owned the automobile and had rented the motel room in his name, and he and Yarbrough carried the keys to the room. It is true that Spencer uttered the forged check, but the jury had an opportunity of observing the three appellants as they sat in the courtroom throughout the trial. It is entirely possible the jury could have concluded that Spencer was not as smart as the other two appellants and that he was a mere "dupe" or "fall guy" in the service, or under the influence and directions, of smarter operators. After all, Spencer cashed a forged check for $500 on the account of a well-known attorney and a well-known planter and did so under the operating lens of a bank camera, and no money was found on his person when he was searched incidental to his arrest. For some reason not apparent in the record, the jury recommended that Spencer's three year sentences run concurrently. We conclude that the trial court did not err in refusing the motions for a mistrial.

All three appellants contend that they were convicted and sentenced three times for the same offense. We are forced to the conclusion that there is merit in this contention. Throughout the entire trial of this case the appellants' attorneys vigorously objected to the trial for three separate violations based on the possession of the three separate checks charged as separate counts in the single information filed in this case. It will only lengthen this opinion to recite the objections and rulings thereon but they were continuous throughout the trial. There is no question that the appellants were charged, tried, and convicted of three separate offenses of possessing the three separate checks involved in this case.

Ark. Stat. Ann. § 43-1009 (Repl. 1964) provides as follows:

> "An indictment, except in the cases mentioned in the next section, must charge but one offense, but, if it may have been committed in different modes, and by different means, the indictment may allege the modes and means in the alternative."

The next section, § 43-1010, provides for joinder of offenses and the *possession* of counterfeits, or of separate counterfeits, is not among the offenses that may be joined. Section 43-1010 provides that the offense named in each of the subdivisions may be charged in one indictment, and the nearest it comes to the charges in this case is:

> "Third. Forgery and uttering forged instruments, or several acts of forgery and uttering forged instruments, when such forgery and the uttering of such forged instruments grow out of the same matter, business or transaction, or when done in a series of transactions relating to the same matter of business.
>
> Fourth. Passing, or attempting to pass, counterfeit money or bank notes, knowing them to be such, and having in possession counterfeit *money* or *bank notes*, knowing them to be such, with the intention of circulating same." (Our emphasis).

In Wharton's Criminal Law and Procedure, vol 2, § 654, is found the following:

> "The simultaneous possession of several forged bank notes is but a single offense. The defendant cannot be prosecuted separately for each bank note."

Citing *State* v. *Benham*, 7 Conn. 414; *State* v. *Egglesht*, 41 Iowa 574, 20 Am. Rep. 612; *People* v. *Van Keuren*, 5 Park. Crim. Rep. (N.Y.) 66. See also Wharton's Criminal Pleading and Practice, § 468, et seq.

In the Iowa case of *State* v. *Egglesht, supra*, the defendant

delivered at the same time and by the same act, to the teller of a bank, four forged checks which purported to have been drawn on four different parties. The court held that this constituted but one offense of uttering forged checks, and that a conviction for uttering one of the checks was a bar to a conviction for uttering the others. In doing so, the Iowa Supreme Court said:

> "When the defendant uttered, at the Davenport National Bank, four forged checks, the character of his act became fixed. He either committed one crime, or he committed four. It is not competent for the State, at its election, by the form of the indictment, to give to defendant's act the quality of one crime or of four at pleasure. The act partakes wholly of the one character or wholly of the other.
>
> We think the decided weight of reason and of authority supports the position that when defendant by one muscular action and one volition passed to the bank in question four forged checks, and procured them to be placed to his credit, he committed one crime, and not four."

In Wharton's, Criminal Pleading and Practice, 8th ed., § 470, at p. 327, pertaining to theft, is found the following:

> "[T]he weight of authority now is that the prosecution, wherever it is at liberty to join in one indictment all articles simultaneously stolen, may be treated, when it selects only one of them for trial, as barring itself from indicting for the others."

See *State* v. *Clark*, 32 Ark. 231, where it was held that stealing several articles simultaneously from the same owner forms but one offense and after one conviction for stealing a part, no further prosecution can be pursued for the rest.

In the case of *Bine* v. *United States*, 331 F. 2d 390 (1964), 5th Cir., the defendant was convicted on three counts of making false statements to the Federal Housing Administration in violation of 18 U.S.C.A. §§ 1001, 1010, and although the

court held that there were two separate crimes committed in that particular case, the court stated the rule as follows:

> "[I]t is well settled that the test for determining whether several offenses are involved is whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense. Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); Morgan v. Devine, 237 U.S. 632, 35 S. Ct. 712, 59 L. Ed. 1153 (1915). * * * Whether a continuous transaction results in the commission of but a single offense or separate offenses is not dependent on the number of unlawful motives in the mind of the accused, but is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed. Caballero v. Hudspeth, 114 F. 2d 545, 547 (10th Cir. 1940)."

In *Keese and Pilgreen* v. *State*, 223 Ark. 261, 265 S.W. 2d 543, the information charged that the defendants did:

> ". . . unlawfully, wilfully and feloniously, falsely and fraudulently have and keep in their possession divers false, forged and counterfeited checks and drafts and fictitious instruments purporting to be checks, etc."

The state proved that the appellants had two checks in their possession. They were each sentenced to three years for the single violation and we affirmed.

In *Velasquez* v. *United States*, 244 F. 2d 416, the defendant was charged and convicted of receiving, concealing and facilitating the transportation of opium, and on a separate count was charged with the sale of opium. The charges referred to separate items of the drug. In affirming the judgment of conviction, the court said:

> "The question of double punishment is presented. The substance of the argument is that the first and second counts of the indictment were predicated upon a single transaction, and that the imposition of separate sentences upon the two counts with provision that the

sentences should run consecutively amounted to double punishment for a single offense. The accepted test to be applied in determining the identity of offenses charged in two or more indictments or in two or more counts in a single indictment is whether the same evidence is required to establish the several indictments or the several counts. If so, there is identity of offenses. But if each indictment or each count requires proof of a fact or element not required by the others, the charges are separate. Gavieres v. United States, 220 U.S. 338, 31 S. Ct. 421, 55 L. Ed. 489; Morgan v. Devine, 237 U.S. 632, 35 S. Ct. 712, 59 L. Ed. 1153; Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306; Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358, 98 L. Ed. 435; Mills v. Aderhold, 10 Cir., 110 F. 2d 765; Beacham v. United States, 10 Cir., 218 F. 2d 528."

In *Wilburn v. United States*, 326 F. 2d 903 (1964), the defendant was charged with unlawfully possessing stolen letters. He was convicted on two counts which accused him, and another charged jointly, with the possession on or about September 4, 1959, of a stolen letter addressed to Stewart Title Company. Under count four he was charged alone with possession of a letter on or about September 9, 1959, addressed to Ray L. Ryan. The record showed that each letter came from a mail depository located in a Houston office building and established that the theft from the depository occurred on one occasion. In upholding the conviction, the United States Court of Appeals, Fifth Circuit, said:

"The usual test to distinguish separate offenses from elements of a single offense is whether each purported offense would require the proof of a fact not essential to the other. If the record showed that appellant stole or secured possession of a mail bag with the letters therein, then the proof of one fact would prove the other. Such is not the case. The conviction on count 2 is based on the testimony of an accomplice that appellant approached him about passing some stolen checks and gave him a group of checks which included one taken from the letter described in count 2. The evidence relating to count 4 is entirely different. Appellant was identified as the man

who burned some papers in a trash can. Among the partially burned papers was the letter mentioned in count 4. Thus, we have two separate acts relating to two separate items on two different days. The proof under one count does not prove an offense under the other count. The only unity is that the letters were mailed on the same day in the same depository. The circumstances of how the theft occurred and how the appellant obtained possession are left to speculation."

In the United States Supreme Court decision in *Bell* v. *United States*, 349 U.S. 81 (1955), Bell was charged on two counts with violation of the Mann Act under provisions of the Act which provide as follows:

"Whosoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose. . . .

Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Bell was charged with having transported two women in violation of the Act and the charge was laid in separate counts for each woman. Both women were transported in the same automobile and on the same trip. Bell was convicted on each count in the district court and the sentences were affirmed by the circuit court of appeals, holding that two separate offenses were committed. In reversing the decision on certiorari, the Supreme Court said:

"Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining crime and fixing its punishment.

\*  \*  \*

[I]f Congress does not fix the punishment for a federal

offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes."

In the case of *Castle v. United States*, 287 F. 2d 657 (1961), the defendant was convicted of knowingly transporting with fraudulent intent five falsely made money orders in interstate commerce. He was tried and convicted on all five counts of the indictment. On petition for rehearing he contended, among other things, that he was convicted of five offenses, one for each of the money orders although there was only one transportation. By per curiam opinion on petition for rehearing, the trial court said:

"Since the transportation of each of the money orders was a separate offense, the contention that there were multiple sentences for a single transportation cannot prevail."

And the petition for rehearing was denied. Certiorari was granted by the United States Supreme Court and by per curiam opinion dated October 16, 1961 (368 U.S. 13), the Supreme Court said:

"We are in agreement with the representations of the Solicitor General that, under the principles announced in *Bell v. United States*, 349 U.S. 81, the petitioner was guilty of but a single offense under 18 U.S.C. § 2314. In light of such representations and upon consideration of the entire record, the judgment is vacated and the case is remanded to the Court of Appeals with instructions to remit to the District Court for resentencing in accordance with this opinion."

In the case at bar not only was different evidence not necessary to the proof of each count—the same evidence was necessary to the proof of each count and the same evidence, and only the same evidence, was actually used in the proof of the separate counts. Had all nine check forms been filled in by forgery in the case at bar, according to the state's theory the appellants would have been subject to minimum

sentences totaling 27 years and maximum sentences totaling 90 years. We do not believe that the Legislature intended such results. To Paraphrase the language of the United States Supreme Court in the *Bell* case, *supra:* The Legislature could no doubt make the simultaneous possession of more than one counterfeit check in violation of § 41-1811 liable to cumulative punishment for each check so possessed, but we conclude that the Legislature did not do so.

We do not reach the question that might have been presented had it been necessary that different evidence be offered to sustain each of the separate counts, such as might have been the case if the purported signatures were of different persons or the forgers had been different persons. We only say that in this case the identical evidence supported each count in the information.

The judgment is reversed as to the two additional counts in each case. The judgment is affirmed as to the single three year sentence for Spencer and the single seven and one-half year sentence for Yarbrough and Robins.

Affirmed in part; reversed in part.