Marcell Albius BARNES *v.* STATE of Arkansas

CR 75-79                                   528 S.W. 2d 370

Opinion delivered October 6, 1975

*Don Langston*, Public Defender, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Alston Jennings Jr.*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Marcel Barnes was found guilty of robbery with a firearm and sentenced to eight years' imprisonment. In this appeal, he argues eight points for reversal. Since we find reversible error in the circuit court's partial denial of his request that he be permitted to conduct his own trial and his concomitant attempt to reject the services of the public defender, we discuss that point first.

Appellant was charged on August 15, 1974. When arraigned on August 29, 1974, he assured the circuit judge that he would obtain counsel, and his trial was set for September 24. Again on September 12, he advised the court that he was still trying to hire an attorney and requested a continuance which was granted with a strong admonition to Barnes not to let the matter "drift along". Trial was then set for October 22 and on October 10, when the circuit judge made inquiry of Barnes, he stated that he had employed J. W. Whitehead as his attorney. A motion for continuance was filed on behalf of Barnes by Whitehead and the trial reset for November 19. Later Whitehead's partner, Patrick D. O'Rourke, was associated as one of Barnes' attorneys. On November 18, Barnes made oral motions to dismiss these attorneys and for a further continuance to obtain another attorney, both of which were granted. On January 3, 1975, the circuit judge discovered that Barnes still had not employed another attorney. Up until this point, Barnes had rejected all offers of the court to appoint counsel but he then agreed to accept representation by the public defender, with the right to employ additional counsel.

Trial was had on February 4. On that morning, Barnes moved that he be permitted to represent himself at the trial. He stated that he had been "lied to" and "deceived" by everyone, including the public defender, but his explanation as to how the public defender had deceived him was vague, to say the least. The trial judge examined Barnes on the basic rules of evidence and trial procedure and appropriately found that he knew nothing about them and was not qualified to represent himself. The judge, feeling that he had a duty to protect the right of Barnes to a fair trial by due process of law, warned him that he would be under the same restrictions that a lawyer would but finally held that Barnes would be allowed to make an opening statement, conduct voir dire examination of prospective jurors, and make a closing argument, but not to examine witnesses. Barnes vehemently protested against the public defender having anything to do with the case and insisted on being allowed to examine the witnesses, claiming a constitutional right to do so, but the circuit judge refused to change his ruling.

Art. 2, § 10 of the Arkansas Constitution provides that an accused in a criminal prosecution shall enjoy the right to be heard by himself and his counsel. Our own cases have clearly recognized the right of a defendant under our constitution to conduct his own defense in a criminal trial, whether for felony or misdemeanor, if he elects to do so. *Wimberly* v. *State,* 214 Ark. 930, 218 S.W. 2d 730; *Williams* v. *State,* 153 Ark. 289, 239 S.W. 1065; *Phillips* v. *State,* 162 Ark. 541, 258 S.W. 403; *Williams* v. *State,* 163 Ark. 623, 260 S.W. 721; *Slaughter* v. *State,* 240 Ark. 471, 400 S.W. 2d 267; *Childs* v. *State,* 243 Ark. 62, 418 S.W. 2d 793.

The question was first treated in this state more than 50 years ago in *Williams* v. *State,* 153 Ark. 289, 239 S.W. 1065, where the accused sought and was granted permission to conduct his own defense, after the court had offered to appoint counsel to defend him. There, speaking through the late great Justice Frank G. Smith, this court said:

The Constitution gives one accused of crime the right to appear by himself and his counsel; but the services of an attorney cannot be forced upon him. Article

2, § 10. Const. 1874. He has the right, if he so elects, to conduct his own defense, but he does not thereby become absolved from the duty of observing the rules of practice designed to promote the orderly administration of the law. *****

In that case the primary question before the court was whether the appellate court would review questions raised in a motion for new trial, where no objection had been made during the course of the trial. The right to self-representation was more directly involved less than two years later in *Phillips* v. *State,* supra. There it was held that an accused could not complain that he was not represented by counsel where his retained counsel, through a misunderstanding, did not appear, and the defendant rejected the appointment of counsel. This court then said:

> This court has held that the constitutional guaranty of the right of the defendant in a criminal case to be heard in his own defense by himself and counsel is for the benefit of the accused and that the accused may at his option decline to have counsel appointed to represent him and conduct his own case. *Williams* v. *State,* 153 Ark. 289, 239 S.W. 1065.

> In a case note to 17 ALR 266, it is said that it is universally held that a defendant in a criminal case who is sui juris and mentally competent may conduct his defense in person without the assistance of counsel. To the same effect, see case note to Ann. Cas. 1913C, at page 739. Numerous cases are cited in the notes to support the holding.

In *Slaughter,* followed in *Childs,* we held that the right to counsel in a criminal trial was a personal one, which could be waived, either at the pretrial stage or at trial. The only qualification on this right ever recognized by us is that an accused's waiver of his right to counsel be knowingly and intelligently made. See *Childs* v. *State,* supra; *Slaughter* v. *State,* supra; *Phillips* v. *State,* supra.

Even if our own constitution and cases did not control, while this case was pending on appeal, the U.S. Supreme

Court removed all do bt about the existence of a federal constitutional right of a defendant in a state criminal trial to self-representation under the Sixth Amendment to the U.S. Constitution, as made applicable to the states by the Fourteenth Amendment, so long as he voluntarily and intelligently elects to do so. See *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). In that case, it was made clear that forcing a defendant against his will to accept a state-appointed public defender and denying his request to conduct his defense was reversible error. The factual background is strikingly similar to this case.

The state's efforts to distinguish *Faretta* in its brief filed three weeks after that decision was rendered, are inapt. Although Barnes did not make his desire to defend himself known to the court until the morning of the trial, in contrast to Faretta's having declared his desire weeks in advance, there is no language in *Faretta* that would lend any significance to such a distinction. The U.S. Supreme Court said that it had concluded that a state may not constitutionally hail a person into its criminal courts and there force a lawyer upon him when he insists that he wants to conduct his own defense. The only qualification that we can find in that opinion is that the defendant's election to proceed without counsel must be voluntarily and intelligently made. This record is devoid of anything indicative of involuntariness in Barnes' election.

Even though we might agree with the trial court, the public defender, our attorney general, and the dissenters in *Faretta* that such an election is pure folly and that only confusion can result, the test whether the election has been intelligently made is not the wisdom of the decision or its effect upon expeditious administration of justice. It is only necessary that a defendant be aware of the dangers and disadvantages of self-representation so the record will establish that the defendant knows what he is doing and his choice is made "with eyes open". His technical legal knowledge is totally irrelevant in the assessment of his knowing exercise of the right to defend himself. The record here clearly discloses that the circuit judge pointed out to the defendant his lack of knowledge of procedures and rules of evidence and the

hazards attendant upon his choice. Barnes' request was not refused because it was not knowingly and intelligently made. It was refused in an effort to protect Barnes from his ignorance as to rules of evidence and procedures in presenting evidence.[1]

Our own decision, as well as those cited in *Faretta*, have clearly pointed to its result. See also, *Minor v. United States,* 375 F. 2d 170 (8 Cir., 1967). It is interesting to note that the majority in *Faretta* read Art. 2 § 10 as explicitly conferring the right of self-representation. We have consistently done so, too.

We find the limitations on the right enumerated by the Court of Appeals of New York appropriate and consistent with our own decisions and with *Faretta*. In *People v. McIntyre,* 36 N.Y. 2d 10, 324 N.E. 2d 322 (1974), which antedated the decision in *Faretta* but came after it was argued, that court said:

> A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues.

Here the request was definitely unequivocal. It was timely because it was made before the trial commenced. See *McIntyre; Minor v. U.S.,* 375 F. 2d 170 (8 Cir., 1967); *Williams v. State,* 153 Ark. 289, 239 S.W. 1065; *Phillips v. State,* 162 Ark. 541, 258 S.W. 403; *Williams v. State,* 163 Ark. 623, 260 S.W. 721. Had the trial proceeded prior to the request, it may not have been timely. See *Mosby v. State,* 249 Ark. 17, 457 S.W. 2d 836; *Williams v. State,* 16 S.W. 816.

The test whether waiver of the assistance of counsel is intelligently made has been frequently applied. Of course, such

---

[1]In a footnote to the *Faretta* opinion, it is made clear that, even over the objection of a defendant, the court may appoint "standby counsel" to aid the accused if and when he requests help and to be available in case termination of self-representation becomes necessary.

a waiver is not intelligently made if the accused is not mentally capable of acting for himself. *Williams* v. *State,* 163 Ark. 623, 260 S.W. 721. Otherwise, the determination in each case must depend upon the particular facts and circumstances surrounding it. *Swagger* v. *State,* 227 Ark. 45, 296 S.W. 2d 204; *Jackson* v. *State,* 249 Ark. 653, 460 S.W. 2d 319. Even a minor who is mildly defective mentally may knowingly and intelligently waive his right to counsel, if he understands the situation and questions propounded to him on the subject. *Cox* v. *State,* 240 Ark. 911, 405 S.W. 2d 937. See also, *Jackson* v. *State,* supra. All that is required is that the accused have full knowledge or adequate warning concerning his rights and a clear intent to relinquish them. *Franklin* v. *State,* 251 Ark. 223, 471 S.W. 2d 760; *Jackson* v. *State,* supra.

This record shows clearly that Barnes was well informed and advised of his rights and that he deliberately and persistently stated his election to conduct the trial without counsel. There is nothing to indicate that he was mentally incompetent or defective in any way or that he had, or intended to, engage in disruptive conduct.[2] We are not concerned with the wisdom of his decision. The judgment here must be reversed for failure to permit Barnes to conduct his own defense.

This brings us to a consideration of those points for reversal which are likely to arise upon a retrial. Assuming that appellant's arrest was illegal, as he asserts, we are convinced that the court did not err in refusing to suppress the testimony of Sylvia Rush, the victim of the robbery at a liquor store identifying him as the robber. The only evidence of identification at the trial was that made by her in court. The evidence that her in-court identification of Barnes was not tainted by any pretrial lineup or showup identification clearly supports the denial of Barnes' motion to suppress her testimony.

At a pretrial hearing on appellant's motion to require a showing of probable cause for his arrest and to suppress Mrs.

---

[2]In a footnote the majority in *Faretta* clearly recognized that self-representation may be terminated by the trial judge when a defendant deliberately engages in serious and obstructionist misconduct.

Rush's identification testimony she positively identified Barnes as the robber. She said that Barnes had been in the liquor store some two weeks after the robbery and had questioned her about the robbery and her ability to describe the robber. She denied having seen him after the robbery except on this occasion and at the lineup, but said she had seen him at another liquor store where she was sometimes employed.

At this hearing, Barnes admitted being at the liquor store where Mrs. Rush worked on the occasion she said he appeared after the robbery. At the trial, she said that the robber was just across the counter from her when she was robbed and that she had seen him twice previously at the other liquor store and on the subsequent occasion when he questioned her about the robbery. It was brought out on her cross-examination that she had said that another man the police brought in was not the robber, even though he was about the same height and weight as the robber and wearing a shirt similar to that worn by him. We find no indication that her in-court identification was tainted by the lineup.

There was error in the admission of testimony about the circumstances of Barnes' arrest. It was made more than two weeks after the crime at a motel, which was not Barnes' place of residence. We find nothing of any probative value on the question of guilt or innocence in this testimony. This evidence was totally irrelevant. See *Stuart* v. *State,* 222 Ark. 102, 257 S.W. 2d 372.

There was no error in denial of a mistrial because of questions propounded to Barnes on cross-examination. The prosecuting attorney asked Barnes if he had not been guilty of possession of marijuana on June 23, 1973, and he answered negatively. When the prosecuting attorney asked, "And during the arrest you were guilty of flushing it down the commode when the officers attempted to place you under arrest?" he also answered negatively. When the public defender objected to the form of the question because it referred to an arrest, the circuit judge promptly and positively instructed the jury to disregard the question as asked and not to consider it as evidence in its deliberations. After the judge per-

mitted the prosecuting attorney to rephrase the question, he again asked Barnes if he had not tried to flush the marijuana down the commode. An objection was promptly sustained and appellant never answered this question. No motion for mistrial or for admonition was made at this time.

Appellant's argument that his motion for directed verdict should have been granted is actually based upon a contention that the testimony of Sylvia Rush was discredited and the rather odd argument that his own conflicting testimony overrides hers. Of course the credibility of the witness was a matter for the jury's consideration. We can say that the testimony of a witness should be disregarded only when it is physically impossible, or that there is no reasonable probability that his version is correct. See *Baldwin v. Wingfield*, 191 Ark. 129, 85 S.W. 2d 689. Where the testimony is conflicting, this court does not pass upon the credibility of the witnesses and has no right to disregard the testimony of any witness after the jury has given it full credence, at least where, as here, it cannot be said with assurance that it was inherently improbable, physically impossible or so clearly unbelievable that reasonable minds could not differ thereon. *King v. State*, 194 Ark. 157, 106 S.W. 2d 582; *Linebaugh v. State*, 192 Ark. 1178, 97 S.W. 2d 61.

Another point urged by appellant is that the court erred in giving an instruction covering the statute relating to punishment for robbery with a firearm. See Ark. Stat. Ann. § 43-2336 (Supp. 1973). It seems from a reading of his brief that the argument advanced is that there is confusion in administering the statute in the trial courts, as illustrated in our decisions, that our decisions have added to the confusion and hence the statute is unconstitutional as a violation of due process because it is vague and indefinite. This unique argument is unsupported by citations of precedent. Furthermore, appellant does no more than give citations to our decisions which he says are illustrative of the confusion.

In *Johnson v. State*, 249 Ark. 208, 458 S.W. 2d 409, we held that the trial judge could not add an additional term of years to the sentence fixed by the jury upon his finding from the evidence that a firearm was used and that the accused

must be informed from the information or indictment that he is charged with use of a firearm. In *Redding v. State*, 254 Ark. 317, 493 S.W. 2d 116, we held that the factual issue as to use of a firearm must be resolved by the jury, unless a jury trial is waived, in which case the issue is determined by the trial judge. In *Roach v. State*, 255 Ark. 773, 503 S.W. 2d 467, we held that there was no double jeopardy or violation of due process in a jury's enhancement of a sentence both on account of the accused's being a habitual offender and on account of his use of a firearm. In *Cotton v. State*, 256 Ark. 527, 508 S.W. 2d 738, we reiterated that the use of a firearm must be charged in the information and that, even though the jury made a specific finding that a firearm was used, the jury, not the judge, must enhance the sentence on that account. In *Haynie v. State*, 257 Ark. 542, 518 S.W. 2d 492, we held that the enhancement of the sentence by the trial judge after an affirmative finding by the jury was not reversible error in the absence of an objection in the trial court to that procedure and that the information need not charge the use of a firearm in a separate count or paragraph.

We do not perceive any confusion and certainly not enough to justify us in classifying the statute as vague and indefinite.

We do not fully comprehend appellant's conclusion that the statute and its application in this case constitute double jeopardy and violate due process. He does not say how this results. He does suggest that the manner of submitting the question to the jury was confusing, somehow made its verdict violative of due process, and placed him in double jeopardy. We are simply unable to follow this argument. The judge instructed the jury on the definition of robbery and the range of punishment permissible. He then stated that Barnes was charged with employing a firearm during the commission of a robbery and that, if they found from the evidence, beyond a reasonable doubt, that he did employ a firearm as a means of committing a robbery, the jury might subject him to a period of confinement, not to exceed 15 years, in addition to the period of confinement for the conviction of robbery, and that it would also run consecutively thereto. The forms of verdict were submitteed to the jury on two separate sheets of paper.

One of them was headed "VERDICT AS TO ROBBERY" followed by the words "We, The Jury, find —" and a number of blank lines with a line for the signature of the foreman. The other form was identical, except that it was headed "VERDICT AS TO USE OF FIREARM IN ROBBERY". On the first, the jury filled in the words "Marcel *Alvin* Barnes - Guilty and fix punishment at three years" over the signature of the foreman. On the second the words inserted over the foreman's signature were identical, except that the punishment was fixed at five years.

We do not see how the jury could have been confused by the procedure. If Barnes was guilty of robbery, he was certainly guilty, under the state's evidence, of using a firearm. Obviously the jury was not confused. Their assessment of the minimum punishment for the basic offense is itself an indication that they clearly understood the law and the procedure.

Since the conviction is reversed, we cannot say, with assurance, that there will be a question about credit for pretrial incarceration on retrial. The circuit judge held a hearing at the time of sentencing and denied full credit for that time. Barnes testified that he had been indigent at all times since his arrest. The judge denied credit for any time spent in jail prior to January 1, after establishing that all continuances had been granted at Barnes' request, obviously because he felt that Barnes' tactics had been dilatory. He may have been justified in this feeling. See *Slaughter* v. *State*, 240 Ark. 471, 400 S.W. 2d 267. If so, the court had discretion to deny credit for the delay attributable to his actions. *Coleman* v. *State*, 257 Ark. 538, 518 S.W. 2d 487. The state and victims of crime are to be considered, along with persons accused in requiring promptness in trials.

Appellant asks us to abandon our decisions upholding the exercise of discretion by the trial judge in any case, saying that they are legal gymnastics which strain legal reasoning to uphold the trial court's discretion in denying "jail time" credit and that the "legal mess created by these cases should be cleared up."

We hasten to point out that the statute in force at the

time of Barnes' trial clearly vests discretion in the trial judge to decide whether credit for "jail time" be given. Ark. Stat. Ann. § 43-2813 (Supp. 1973). We have not felt, and do not now feel that we are at liberty to amend or repeal this statute. We have recognized for quite some time that there are constitutional limitations on the exercise of that discretion in that "jail time" credit cannot be denied when the pretrial incarceration was due *solely* to the indigency of the accused. See *Smith* v. *State*, 256 Ark. 425, 508 S.W. 2d 54; *Tate* v. *State*, (Supplemental Opinion on Rehearing) 258 Ark. 138-A, 524 S.W. 2d 624 (1975); *Yarbrough* v. *State*, 257 Ark. 732, 520 S.W. 2d 227. But we have held that such credit is not required in the absence of evidence that the pretrial confinement was due to the financial inability of the accused to make the bail set by the circuit court. *Ransom* v. *State*, 257 Ark. 522, 518 S.W. 2d 490. See also, *Yarbrough* v. *State*, supra. The right may be bargained away. *Ray* v. *State*, 256 Ark. 310, 509 S.W. 2d 830. It is to be credited on the sentence imposed and the sentence cannot be made retroactive to the date of the original incarceration in lieu of the credit. *West* v. *State*, 257 Ark. 582, 518 S.W. 2d 497; *Harper* v. *State*, 249 Ark. 1013, 462 S.W. 2d 847. Any confusion in appellant's mind must arise from a failure to read decisions prior to *Smith* in its light and in the light of subsequent decisions.

The judgment is reversed and the cause remanded.