WESTERN COAL & MINING COMPANY v. KRANC.

4-4490

Opinion delivered January 11, 1937.

Mark E. Woolsey and *Pryor & Pryor,* for appellants.

*Carter & Taylor, J. E. Yates* and *Partain & Agee,* for appellees.

BUTLER, J. The appellees, plaintiffs below, brought separate suits against the appellant Western Coal & Mining Company for damage to their lands, the result, as alleged, of mining operations conducted by Western Coal & Mining Company. The appellant, Stewart Coal Company, was made a defendant in both cases which were consolidated by the court for trial. The trial resulted in a verdict and judgment in favor of the appellees and this appeal followed.

A number of grounds for reversal are urged upon our attention, but we consider only the contention that the judgment should be reversed because of prejudicial remarks of the trial court made during the progress of the trial and agree with the appellants in this contention.

On the trial of the case it was plaintiffs' theory that in mining coal a number of feet below the surface the supports were withdrawn, resulting after a time in the cracking of the overlying strata and a subsidence of the surface, which plaintiffs contended interfered with the surface drainage of the soil and destroyed the water supply. In the case of Mrs. Annie Kranc and Mathilda Reiman damage was laid in the sum of $2,750 and in the case of Ray O. Wilson and wife in the sum of $1,800. The existence, cause, nature and extent of the damage were issues in sharp conflict. The testimony adduced on behalf of the plaintiffs tended to support their contention and fixed the damages sustained at considerable sums. During the course of the introduction of testimony

on behalf of defendants, in an attempt to refute that given for plaintiffs and while witness, Fred Meyers, was testifying, the court interrupted defendants' attorney, saying: "Let him go, this is an imposition on the jury. It appears to me the jury understands the facts of this case, both theories. Why take further time describing the damages to this place, you have had six witnesses, and I allowed them five on the Kranc case." Defendants' attorney saved his exceptions to the remarks of the court and indicated that there were a number of other witnesses he desired to introduce. The court then remarked: "I will let you use what you have, but it looks to me like just taking time. They are intelligent gentlemen and don't have to be told a dozen times, they can understand." Exceptions were likewise saved to this remark of the trial court.

No principle is better settled than that a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other.

The remarks indulged in by the trial court in the instant case to our minds had the effect of minimizing the value of the evidence admitted. The witness, who was testifying when the interruption was made, was testifying with relation to conditions testified to by other witnesses for defendants and was corroborative of their testimony. The court said: "This is an imposition upon the jury." This remark might well induce in the minds of the jury a belief that the testimony of defendants' witnesses was entitled to but little weight. The court's conduct would have been less likely to have worked prejudice had he refused to permit any other witnesses to

testify with relation to the damage than by permitting them to so testify with the remark (after having first said, "This is an imposition upon the jury,"): "I will let you use what you have, but it looks to me like just taking time. They are intelligent gentlemen and don't have to be told a dozen times—they can understand."

We are not unaware that many things occur during the trial of a case to fray and irritate the nerves of the presiding judge and that he is not immune to the natural frailties of humanity, but because of his position he must exercise the greater forbearance and patience. We have not the slightest doubt that no partiality or prejudice was intended, but it seems to us that the comments of the court in the hearing and presence of the jury tended to place counsel for the defendants at a disadvantage and disparaged the testimony of their witnesses. Illustrations of the principles we have stated are found in many cases collected in case notes 15 and 19, § 103, 64 C. J., page 99, subject, "Trial."

For the error mentioned, the judgments of the court below are reversed, and the causes remanded for a new trial.

HUMPHREYS and MEHAFFY, JJ., dissent.

MEHAFFY, J. (dissenting). These two cases were brought separately by appellees and were consolidated for trial and tried together. The evidence in the two cases was similar, and especially as to damages. The judgments were reversed by this court solely on the ground that the remarks of the trial court were improper. The remarks which the court holds to be improper are set out in the opinion of the majority.

Evidence was being taken in the Wilson case when the remarks complained of were made by the court. Evidence had already been introduced in the Kranc case, and the court said to appellant's counsel: "Let him go, this is an imposition on the jury. It appears to me the jury understands the facts of this case, both theories. Why take further time describing the damages to this place, you have had six witnesses, and I allowed them five on the Kranc case." The court then remarked: "I will let you use what you have, but it looks to me like

just taking time. They are intelligent gentlemen and don't have to be told a dozen times.''

The above are the remarks which this court holds calls for a reversal of the cases. The court called their attention to the fact that appellant had been permitted to use five witnesses in the Kranc case and they had used six in the Wilson case. The only authority cited by this court are case notes 15 and 19, § 103, 64 C. J. 99, subject, ''Trial.'' These case notes cite *Hudson* v. *Hudson*, 90 Ga. 581, 16 S. E. 349. In that case the court said:

''During the trial the court said to a witness on the stand, one John Carr, 'How do you remember dates so well? You have a talent, a gift, that way?' and when another witness, Sam Webb, was introduced, the court said, 'The witness has not got the money that John Carr has. Do you know John Carr? He has a better recollection than you. Which is the elder man, you or he?' and again, when John Carr was recalled, the court said to him, 'You have established a reputation for a good recollection, but you cannot tell the price of wheat that year; you ought to keep that reputation up.' All these remarks and questions by the court were out of order. It is impossible to know what effect or tendency they may have had upon the minds of the jury. The court may often with great propriety ask questions of a witness on the stand for the purpose of bringing out the facts of the case, but should never indulge in remarks to witnesses, or in comments upon their testimony, which may either magnify or diminish its effect upon the jury as to credibility or value.''

In the next case, *West* v. *Black,* 65 Ga. 647, the trial judge, when he admitted a written conveyance in evidence, remarked: ''The court thought the deed to personalty was worth but little, but as the jurors were judges of the law and evidence, he would permit it to go to the jury for their consideration, if it was worth anything to them.'' This was a comment on the evidence; the court telling them in so many words that he thought it was worth but little.

The next case referred to in the case notes is *Chicago City R. Co.* v. *Enroth,* 113 Ill. App. 285. In that

case, where the counsel was cross-examining a witness, and directing his questions to matters pertinent and material, the trial court said: "It is just as important as it is to ask him what he had for breakfast." The court said in a very close case, this constituted error.

There are some other cases cited in the case notes, but none of them, as I understand, supports the opinion of the majority. Of course, the judge, in the trial of a case, must conduct it in a fair and impartial manner, and he should refrain from making any comments which might tend to result prejudicially to either of the parties. He should make no remark that was calculated to influence the minds of the jury. But, according to the weight of authority, a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment. 64 C. J. 90, *et seq.*

I do not understand how the remarks complained of could have had any prejudicial effect. Trials in the circuit courts are frequently and sometimes necessarily conducted hurriedly, and every person who has had experience in the trial of lawsuits knows that in the hurry of the trial many things may be said, both by counsel and the court, but unless it appears that the remarks of the court resulted in prejudice, the judgment should not be reversed because of such remarks, and I think there is nothing in the remarks of the court in this case that indicates bias or prejudice. *St. Louis I. M. & So. Ry. Co.* v. *Magness,* 93 Ark. 46, 123 S. W. 786.

In the case of *Midland Valley Rd. Co.* v. *Hamilton,* 84 Ark. 81, 104 S. W. 540, this court said, speaking through Chief Justice McCullough: "There was some unseemly controversy between the trial judge and counsel for appellant during the progress of the trial concerning the saving of exceptions, but it does not appear to us that any prejudicial effect could have resulted from it, and we are unwilling to set aside a judgment supported by abundant evidence submitted to the jury upon proper instructions unless we can see that the conduct of the judge tended to prejudice the substantial rights of the appellant in the presentation of the defense."

432

In the case of *Tuttle* v. *State,* 83 Ark. 379, 104 S. W. 135, where improper conduct of the court was alleged as ground for reversal, and where the remarks were much stronger than in the present case, and I think more likely to create prejudice, Judge Hill, speaking for this court, said, after quoting the remarks of the judge: ''It is manifest that the above quoted remarks of the trial judge were improper, and the record discloses no conduct of appellant's counsel tending to excuse impatience or hasty speech. * * * But judgments must not be reversed unless the errors of the trial court work to the prejudice of the losing party. The evidence must be looked to to ascertain whether the verdict is responsive to it or to extraneous matters.''

This court has many times passed on questions of this character, and I have been unable to find any case where a judgment was reversed because of the remarks of the court under circumstances like we have here. I do not believe that we should punish litigants for remarks made by the court, even if they were improper, unless we can say from the evidence that prejudice resulted to the losing party.

I, therefore, dissent, and Mr. Justice HUMPHREYS joins me in this dissenting opinion.