FULLER *v.* STATE.

4630                                          232 S. W. 2d 988

Opinion delivered October 9, 1950.

680

*Batchelor & Batchelor,* for appellant.

*Ike Murry,* Attorney General, and *Robert Downie,* Assistant Attorney General, for appellee.

LEFLAR, J.   Grover Fuller appeals from conviction under an information charging him with stealing two cows from one Richmond.   Fuller admitted that he took the cows from Richmond's pasture near Van Buren on the night of March 7, 1950, and hauled them to Springdale, where he sold them.   His defense was that he believed the pasture had been rented by and was in possession of another person, not Richmond, and that the cows were two that had been stolen from him some time previously by this other person.   It is clear that this belief was a mistaken one, but if he honestly held the belief it was a good defense to the criminal charge of grand larceny, *Wilson* v. *State,* 96 Ark. 148, 131 S. W. 336, 41 L. R. A. (N. S.) 549, Ann. Cas. 1912B, 339, and he was entitled to present his evidence on the point fully and fairly.

The first witness to testify on defendant's behalf was Ben Mayo, high school athletic director who had coached Fuller when the latter had been a football player at the Fort Smith High School in the 1930s, and had kept up with Fuller and his family since then.   Mayo was offered to testify to Fuller's good reputation in the community and also to the fact that though sane, he was inclined to be neurotic, particularly after he suffered a severe head wound while in military service during the war, and was therefore more likely to hold the belief

relied upon as a defense than an ordinary man would be. As a preliminary, defendant's attorney had Mayo identify himself, then asked him eight questions, all answered briefly, which traced the acquaintanceship between Fuller and Mayo from Fuller's high school days to a time shortly before the alleged theft. The last of the series of questions was "What business was he (Fuller) engaged in here?" Mayo's answer was "He was in the dairy business."

At this point, the Circuit Judge said "Just a minute, Mr. Batchelor, we will take too much time here if you expect to prove the reputation of Fuller by this teacher. There is no need to go into all of this. Now you can spend a lot of time on a man's acquaintances and visits and all that. But that wouldn't help the jury and it isn't admissible here."

Defendant's attorney recorded his exceptions to the Judge's remarks.

The Judge then continued "Well, it is just taking up the time of the jury for nothing. He could talk about his football players from now until tomorrow night but that would not help the jury in deciding this matter."

Defendant's attorney again recorded exceptions, and asked "Your honor, do you stop me at this time?"

The Judge resumed "Yes, sir, from pursuing that line of questioning. At this time these men here on the jury have something else to do besides listen to that. They want to try this case, and it is my duty to confine the testimony to points that are material."

Defendant's attorney once more recorded exceptions, and suggested that the matter might be discussed further in another room out of the jury's hearing.

The Judge then said "The only thing, gentlemen, we just have this to do and these men want to be about their business when they finish this, and if we permit this teacher and other teachers to talk about all these things and their acquaintances, it will take three times as long as should be necessary."

The colloquy continued a little longer, then the Judge agreed that they should go to another room away from the jury. After further discussion in the separate room, Mayo was allowed to resume his interrupted testimony. There were some further interruptions by the Judge, of the same general tenor as those just quoted, but not going as far in casting aspersions on the defendant's attorney and witness.

A Circuit Judge presiding at a jury trial should not be a mere automaton on the bench, exerting no control over what goes on before him. He should be more than a moderator who keeps order while counsel do and say what they please before the jury. It is his duty to see not only that the trial proceeds in accordance with law, but that it proceeds efficiently and effectively, and in keeping with the ends of justice. He should, among other things, be free to shut off long-winded and irrelevant testimony or questioning, and to confine counsel to the actual issues in the case being tried. The firm and fair administration of the trial is a part of his job.

We feel, however, that the record in this case shows that the Circuit Judge went too far. We do not find error in his rulings as to the propriety of testimony, nor in the fact that he sought to control irrelevant questioning, but rather in the manner and the language of his rulings concerning what was at the most a minor transgression on the Court's time. Their phrasing and tenor were such as to cast serious reflections on the witness as well as the attorney and to create an impression among the jurors that the testimony could have little value, whereas actually it may have been highly important to the establishment of the defendant's rather unusual defense. The Judge's language tended to minimize the effect of significant testimony, not of irrelevant or unimportant evidence.

". . . a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments

which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the other." *Western Coal & Mining Co.* v. *Kranc,* 193 Ark. 426, 428, 100 S. W. 2d 676, 677. Also, see, *McAlister* v. *State,* 206 Ark. 998, 178 S. W. 2d 67.

The requirement of Art. 7, § 23, of our Constitution, that "judges shall not charge juries with regard to matters of fact", applies as well to the credibility of witnesses and the weight to be given their testimony as to the outright truth or falsity of what they say. *St. L. S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215. And it applies not only to what judges tell juries in the course of formal instructions but also to what they say in colloquys with lawyers in the jury's hearing.

The judgment of conviction is reversed and the case is remanded for new trial.

GRIFFIN SMITH, C. J., and McFADDIN, J., dissent.

GRIFFIN SMITH, C. J. I would affirm the case. While Judge Kincannon no doubt disclosed impatience with defense attorney tactics, I think the record as a whole shows that the conduct criticized by the majority was the result of planned aggravation by counsel designed to achieve the very purpose it accomplished; hence the defendant is not entitled to claim prejudice in circumstances where he was inviting reprimand. On the whole I do not think the Court did anything more than to sternly admonish obedience to well-known rules—rules that were being persistently violated.