Kozy KITCHEN *v.* STATE of Arkansas

CR 80-66                                             607 S.W. 2d 345
Supreme Court of Arkansas
Opinion delivered November 10, 1980

4

*Steven G. Howard* and *Gerald W. Carlyle*, for appellant.

*Steve Clark*, Atty. Gen., by: *Alice Ann Burns*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Kozy Kitchen was found guilty of rape, carnal abuse in the first degree and carnal abuse in the third degree. His conviction was reversed by this court on November 13, 1978, because of error in the summoning of the jury. *Kitchen* v. *State*, 264 Ark. 579, 572 S.W. 2d 839. Thereafter, venue was changed from Jackson County to Lawrence County. After a jury trial on January 27, 1979, appellant was sentenced to a total of 49 years imprisonment pursuant to the jury's verdict finding him guilty on all three charges. Appellant asserts the following points for reversal:

I

THE LOWER COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR PSYCHIATRIC EXAMINATION OF PROSECUTION WITNESS.

II

THE LOWER COURT ERRED IN DENYING THE DEFENDANT'S MOTION IN LIMINE TO SUPPRESS TESTIMONY.

III

THE LOWER COURT ERRED BY INTER-

JECTING ITSELF INTO THE TRIAL TO SUCH A DE-
GREE THAT IT PREJUDICED THE APPELLANT.

## IV

THE VERDICT OF THE JURY WAS NOT
SUPPORTED BY THE WEIGHT OF THE
EVIDENCE.

## V

THE LOWER COURT ERRED IN SEVERAL
RULINGS ON THE EVIDENCE WHICH
SINGULARLY AND CONSIDERED AS A WHOLE
AFFECTED SUBSTANTIAL RIGHTS OF THE
DEFENDANT.

We find reversible error.

We will first treat appellant's last point, because we find reversible error on one ruling on the admissibility of evidence which, as we see it, affected a substantial right of appellant.

## V

The principle witnesses against appellant were his wife, Daisy, and her three daughters, the alleged victims of the sexual crimes with which appellant was charged. The credibility of these witnesses was probably the most important issue in the case. Appellant called Richard Allen, an attorney, who was the deputy prosecuting attorney who had participated in appellant's first trial and who had conversed with Daisy Kitchen and at least one of her three daughters. Appellant's counsel examined Allen about occasions when Mrs. Kitchen had brought the girls to his office and wanted to change the stories they had earlier told accusing Kitchen of the crimes with which he was charged. These stories had been told under oath in the juvenile court when Arkansas Social Services had brought a proceeding to take custody of the three girls. Appellant also brought out on direct examination that Allen had explained the penalties of perjury to Mrs.

Kitchen and whichever of her daughters were present when he was told they wanted to change their testimony. On cross-examination, the state's attorney elicited testimony that he had heard Mrs. Kitchen and the three girls testify during the trial, in several hearings in Newport, and in the hearing in the Juvenile Court of Jackson County. The state then elicited from Allen the statement that these four witnesses had told essentially the same story each time they had testified under oath. Appellant's counsel objected on the ground that the state was trying to rehabilitate its witnesses by use of prior consistent statements. The objection was well taken. The prior consistent statements were hearsay. Ark. Stat. Ann. § 28-1001, Rule 801 (c) (Repl. 1979). They could be admissible as an exception to the hearsay rule if they were offered to rebut an express or implied charge of recent fabrication or improper influence or motive. Ark. Stat. Ann. § 28-1001, Rule 801 (d) (1) (ii). These is no doubt about appellant's efforts to show that these witnesses had fabricated their accusations and that their motives were improper. Still, there is nothing to indicate that there could have been any fabrication subsequent to the juvenile court hearing or that the motive of these witnesses was any different at the time of the second trial than it had been at any of the previous hearings. A highly regarded authority has taken the position that, where the attack on the witness is by inconsistent statements, the proof of a consistent statement is admissible only if it was made before the plan or contrivance to give false testimony was formed. According to this authority, the fabrication is not required to be recent as related to the trial, but it is necessary that the contrivance be more recent than the consistent statement. We have followed this interpretation in our first decision on the point after the adoption of the Arkansas Uniform Rules of Evidence. In *Brown* v. *State*, 262 Ark. 298, 556 S.W. 2d 418, we held at the word "recent," describing the fabrication is a relative term meaning that the challenged testimony was fabricated to meet the exigencies of the case (not the trial). Under the *Brown* interpretation, the prior consistent statements of these witnesses were not admissible because the motive for fabrication was as great when the first statement was made as when the testimony was given. See *George* v. *State*, 270 Ark. 335, 604 S.W. 2d 940 (1980). We cannot say that the error did not affect a substantial right of

appellant because the testimony of these witnesses was essential to his conviction and the evidence to corroborate them was, to say the least, slight. We will consider all other contentions made by appellant under the broad coverage of this point and under the other points stated by appellant we consider likely to arise on a retrial.

Appellant contends that testimony that he ejaculated into the mouths of the girls was irrelevant because this testimony was not necessary to show the essential element of the crimes — penetration of a body cavity of the victim by a penis. We note that appellant made no objection to that testimony by two of the girls. Although appellant says that under Ark. Stat. Ann. § 28-1001, Rule 103 (d) (Repl. 1979), we may take notice of errors in admission of evidence if they affect substantial rights, even though they were not called to the attention of the trial court, we do not. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980).

The relevance is not outweighed by the inflammatory nature of the testimony by reason of the explanation given by the witnesses for the conduct of appellant. They testified similarly. According to them, appellant expressed the desire to adopt the daughters of his wife "as his blood kin" or "through his bloodline," not by legal means, and wanted to change the Wilson nature, which he did not like, to the Kitchen nature. Mrs. Kitchen explained that this meant that each of the children had to take his sperm in her mouth and swallow it in order to be a Kitchen, and that this explanation was made to each of the children. All this testimony was relevant to the issues. We will treat this matter further when we consider appellant's point II.

Appellant says that the court erred in permitting Daisy Kitchen to testify about whippings of her and the three minor girls. His objection was that the testimony was not relevant, but if relevant, its probative value was outweighed by its inflammatory nature.

The matter of the whippings was brought out on cross-examination of Daisy Kitchen. Appellant's counsel had examined this witness about her statements that her ac-

cusations were not true, her love for appellant, her having written letters to him after he was imprisoned professing her love for him, her fear of appellant, appellant's desire that a baby born to them be brought up by his first wife, her delay in reporting the sexual offenses and her visits to appellant at Cummins Prison. After extensive examination along these lines, appellant's counsel questioned her about a letter, which she said she had written at appellant's dictation and, when asked why she had written it, explained that it was because of her fear that appellant's friends would kill her if she did not. Thereafter, appellant's counsel presented her with another letter she had written expressing affection and she read it to the jury at his request. In this letter, Mrs. Kitchen had said that she was "so scared" of appellant before their baby was born and that his whippings were not like the kind she had had when she was a little girl. It also contained a statement that he had caused the girls to whip one another and to whip her. Appellant offered this letter in evidence. Another letter was introduced in which Mrs. Kitchen had asked appellant to forgive her for the terrible lies she had told and had had the girls tell, about his having engaged in sexual activity with them. Appellant's counsel, after having the witness confirm that she had testified that she did not love appellant and was afraid of him, obtained an admission from her that she had engaged in sexual intercouse with appellant in the Jackson County jail. When asked why, she stated that she was afraid not to do what he told her to because of his previous threats and something else that had happened.

On redirect examination, Mrs. Kitchen was asked to explain the statement in her letter to appellant about whippings. She then told about appellant making the girls strip naked and whip each other for something they had done or failed to do or for failure to answer questions as he desired them to. She also told of his having whipped her with a belt or shoe and of making her stip naked, except for her panties, while she was pregnant, and causing the children to whip her on her hands and knees and making her go up and down the hall, while the children chased and whipped her. She was then asked why she had written the letters and responded by saying that it was because of her fear of the whippings and knowledge of what would happen if she did not and because

appellant had told her that if she did anything to cause him to go to prison, he would make sure that she went, too.

Appellant opened up the subject of the whippings at his own risk. *Parker* v. *State*, 265 Ark. 315, 578 S.W. 2d 606. The basic function of redirect examination is to enable a witness to explain and clarify any relevant matters in this testimony that have been weakened by cross-examination and to rebut the discrediting effect of any damaging statements or admission elicited on cross-examination. We have said that a witness should be allowed a full opportunity to explain matters brought out on cross-examination, to rebut any discrediting effect they may have had or to correct any wrong impression that may have been created. *Allen* v. *State*, 260 Ark. 466, 541 S.W. 2d 675. Certainly the letters were statements that tended to discredit Mrs. Kitchen's testimony. There was no abuse of the trial court's discretion in permitting this redirect examination.

Appellant called as witnesses several persons he now identifies as inmates of Cummins Prison. He says that he attempted to have these witnesses testify about statements made by the prosecution witnesses and that the state's objection on the ground of hearsay was sustained. We cannot say that there was error on this question because the abstract of the record reveals no proffer of the testimony of any of the witnesses.

I

On December 27, 1978, appellant filed a motion to require a psychiatric examination of the four principal witnesses against him. The step-daughters of appellant were 15, 13 and 11 years of age at the time of the trial. He alleged that they were pathological liars, mentally incompetent, and therefore incompetent to testify. He also alleged that the daughters were so dominated by their mother that they were incapable of telling the truth. He supported the motion with an affidavit, which we do not consider because it is not abstracted. The motion was heard and denied on February 8, 1979.

Insofar as it is pertinent to our inquiry, appellant was justified in taking the position that without the testimony of

these witnesses, there could have been no conviction and that the corroborating evidence was slight. Appellant correctly perceives that the common law tests of competency of a witness in a criminal case in Arkansas have been clearly established. They are: the ability to understand the obligation of an oath and to comprehend the obligation imposed by it; an understanding of the consequences of false swearing; and the ability to receive accurate impressions and to retain them, to the extent that the capacity exists to transmit to the factfinder a reasonable statement of what was seen, felt or heard. *Batchelor* v. *State*, 217 Ark. 340, 230 S.W. 2d 23; *Keith* v. *State*, 218 Ark. 174, 235 S.W. 2d 539; *Reynolds* v. *State*, 220 Ark. 188, 246 S.W. 2d 724; *Harris* v. *State*, 238 Ark. 780, 284 S.W. 2d 477; *Allen* v. *State*, 253 Ark. 732, 488 S.W. 2d 712. The question of competency is a matter lying within the sound discretion of the trial judge and, in the absence of clear abuse of discretion, or manifest error, its exercise is not reviewable on appeal. *Hamblin* v. *State*, 268 Ark. 497, 597 S.W. 2d 589; *Harvey* v. *State*, 261 Ark. 47, 545 S.W. 2d 912; *Williams* v. *State*, 257 Ark. 8, 513 S.W. 2d 793; *White* v. *Mitchell*, 263 Ark. 787, 568 S.W. 2d 216; *Keith* v. *State*, supra; *Allen* v. *State*, supra; *Crosby* v. *State*, 93 Ark. 156, 124 S.W. 781.

In determining the competency of a witness, the court must begin with the presumption that every person is competent to be a witness except as provided in the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001, Rule 601 (Repl. 1979). There is no exception applicable under the circumstances presented here. The qualification of a person to be a witness is a preliminary question to be detemined by the trial court. Ark. Stat. Ann. § 28-1001, Rule 104 (a) (Repl. 1979). Error may not be predicated upon a ruling admitting evidence unless a substantial right of the objecting party is affected. Ark. Stat. Ann. § 28-1001, Rule 103 (a) (Repl. 1979). To uphold appellant's argument on this point, we must find that a substantial right of appellant has been affected. Thus, appellant has the burden of showing that he has a substantial right which was affected by a clear abuse of the trial court's discretion in admitting the testimony of those four witnesses without prior psychiatric examination.

We take the position that the fact that the testimony of

an alleged victim in a trial on a charge of sexual offense will be without corroboration, or will be only slightly corroborated, does not compel a psychiatric examination or evaluation of a witness considering her competency to testify, in the absence of a statutory requirement, although there is respectable authority supporting a contrary view. We also adopt the position that the question whether there should be a psychiatric examination as an aid to the trial judge in exercising his discretion is a matter which itself should lie within the sound judicial discretion of the trial judge, at least when he is otherwise satisfied as to the competency of the witnesses. We believe this to be not only the majority view but the better view of this matter. *State* v. *Klueber*, 81 S.D. 223, 132 N.W. 2d 847 (1965); *State* v. *Manning*, 162 Conn. 112, 291 A. 2d 750 (1971); *Ballard* v. *Superior Court*, 64 Cal. 2d 159, 49 Cal. Rptr. 302, 410 P. 2d 838, 18 ALR 3d 1416 (1966); *State* v. *Miller*, 35 Wis. 2d 454, 151 N.W. 2d 157 (1967); *Wilk* v. *State*, 217 So. 2d 610 (Fla. Dist. Ct. App., 1969). See also, Annot, 18 ALR 3d 1433 (1968). This rule has been applied, appropriately we feel, where the witness, a relatively young girl who was allegedly the victim in a rape charge, was subject to attacks on her crediiblity. *McDonald* v. *State*, 307 A. 2d 796 (Del. 1973).

Although we do not consider the case of *Mangrum* v. *State*, 227 Ark. 381, 229 S.W. 2d 80, relied upon by appellant, to be in point on the issue before us, it is more nearly supportive of the position we take than of appellant's arguments. The opportunity of the trial judge to observe the proposed witness, his manner, his capacity, his intelligence, and his understanding of the obligations of the oath are important factors in deciding the question of competency. *Keith* v. *State*, supra; *Mangrum* v. *State*, supra.

Appellant obviously recognized his burden of showing that these four witnesses against him were not competent to testify by seeking to require that they be psychiatrically examined. There are no statutory provisions either requiring or providing for any such examination.

Viewing the matter as we do, we turn to the question whether the trial judge abused his discretion in denying the

motion for a psychiatric examination of the witnesses in this case. Appellant offered the testimony of David Simmons, an attorney employed by the Northeast Arkansas Legal Services in Newport; Richard Allen, Deputy Prosecuting Attorney for Jackson County, when appellant was first tried; Mrs. Daisy Kitchen; the 15-year-old daughter, to whom we will refer as A; the 13-year-old daughter to whom we will refer as B; and the 11-year-old daughter, to whom we will refer as C. We put little emphasis on the fact that each of the four witnesses, on some occasion and some of them on several occasions, had made inconsistent statements, some of which were inconsistent with appellant's guilt. The inconsistency of these statements was a matter going to their credibility as witnesses and inconsistent statements made prior to the second trial, whenever made, were admissible in evidence for impeachment purposes. *Scifres* v. *State*, 228 Ark. 486, 308 S.W. 2d 815; *Baysinger* v. *State*, 261 Ark. 605, 550 S.W. 2d 445. The only conditions for their admission were met by affording the witness and the state the opportunity to explain or deny them. The interests of justice did not recognize exclusion of the inconsistent statements. Ark. Stat. Ann. § 28-1001, Rule 613 (b) (Repl. 1979).

David Simmons had represented Mrs. Kitchen in a proceeding in juvenile court when Arkansas Social Services was attempting to take custody of her three daughters. He testified that she had come to his office about two or three weeks prior to appellant's first trial and had asked him what would happen if the statements she had made in juvenile court were not true. He said that he had advised her that the state might seek perjury charges and that she might be sent to prison and thereby lose custody of her children. According to Simmons, Mrs. Kitchen was only concerned about the effect changing her story might have on losing her children. Simmons said he also talked with A, who told him that her earlier testimony that appellant had committed certain acts of oral sex were not true. A appeared to Simmons to be upset and nervous all during the time she was in his office. Neither the mother nor the daughter was under oath at the time.

Richard Allen said that he had talked with Mrs. Kitchen while he was preparing for the first trial and that she had

told him that the accusations she had made against appellant were false. All three daughters were present. Mrs. Kitchen and the girls indicated that the accusations they had made against appellant were untrue and that they had made up their story about appellant. Allen said that he explained to them the possible consequences of changing the story they had given up until that time and that he felt that it was his duty to explain to Mrs. Kitchen that if she lied under oath in juvenile court, she could be prosecuted for, and was guilty of, perjury. Allen said that he had probably informed the mother and her daughters of the statutory penalty for perjury. Allen said that he had had a second conversation with this group after he had sent them to Little Rock and had received a report of their visit there which indicated that Mrs. Kitchen had been lying on the occasion of the first conversation with him. This conversation also took place before appellant's first trial on the charges. Allen said that when he showed these witnesses the results of the report, they admitted that what they had said all along was the truth.

Mrs. Kitchen testified that she had made statements that the accusations against her husband were untrue and that she had written a letter to him saying that she had lied about his having had sex with the girls. She said that she was told to tell Simmons that the accusations were untrue by appellant who said that this would help him. She did not think she had told Allen that the accusations were untrue but she remembered that he had told her about the penalty for perjury. She said that she had written the letters to appellant because he had said this would help him, because he had said "they" would kill him, and she did not want him killed. Another reason she gave for writing the letters was to stop appellant from fussing at her about coming to see him at the penitentiary. She said that she was afraid appellant would kill her if he were released but that she had gone to the penitentiary to see him five or six times.

A testified that she lied in school, sometimes pretty regularly, and that she lied to her parents to keep from getting in trouble. She remembered having told Allen that the accusations against appellant were false, but did not remember having told Simmons this. She said that between

the time of appellant's arrest and his first trial, she had talked with her mother about how she was going to testify and that her mother told her what to say. A did not remember whether she had told a lie in appellant's first trial, and did not remember whether her mother had told her to say certain things so the mother would not go to prison. She admitted having visited with appellant when he was in Cummins prison, but did not know whether she had told people there that he had not done anything. Upon cross-examination by the court, this witness said that she knew that one would be punished for not telling the truth, particularly when under oath. She said that she had told the truth when the case was first tried and that she was now telling the truth.

B was qualified by the court as a competent witness as to her ability to know the difference between a lie and the truth and her knowledge that one would be punished for lying. She recalled that she was under oath when she had first testified against appellant at his first trial and said that her testimony then was true. She admitted that she had gone to Allen's office and told him the accusations against appellant were untrue, but said that she had lied to Allen. She said that she would not tell a lie to keep her mother from going to prison.

C said that she knew the difference between a lie and the truth, that it was wrong to tell lies, and that one would be punished for telling lies. She remembered going to Allen's office and telling him that the things she had said about appellant were not true, but she did not remember going there with her mother and telling him that appellant did not do anything to her and her sisters. She later said she remembered going to Allen's office but did not remember whether she had said anything herself. She said that she had told a lie in school, had told a lie to her mother, but would not tell a lie to keep her mother from going to prison. She said that her testimony in appellant's first trial was the truth and that the testimony she would give in the second trial also would be the truth.

The trial judge could readily have found from this testimony that all of these witnesses recognized the obligations imposed by an oath to tell the truth, that

whatever inconsistent statements they may have made were not made under oath, that appellant's arguments that they were pathological liars and mentally incompetent were either exaggerated or unfounded, and that a psychiatric evaluation was unnecessary. We find no abuse of the trial court's discretion.

## II

Appellant's motion in limine to suppress testimony asked the court to suppress any testimony relating to any type of sexual activity involving appellant and any of the prosecution witnesses if the activity did not involve the penetration of any body cavity of any of the alleged victims. This motion was submitted to the court on argument only. It was also denied at the pretrial hearing just preceding the trial. In his brief, appellant gives examples of the sort of testimony he sought to suppress. The first as that of the witnesses relating to appellant's ejaculation in their mouths. Other examples were testimony of one of the girls about her mother licking sperm off her vagina after appellant had rubbed his penis on it, and that concerning whippings administered by appellant. It does not appear that these specific items of testimony were mentioned in the motion. Yet, in appellant's argument of the motion, appellant only pointed out that one of the girls had testified, at the first trial, that appellant's penis had not "gone in" and that another had said that appellant had put his penis on her vagina and rubbed her. In neither the motion nor in defense counsel's argument was there any other specification of the testimony that appellant wanted suppressed. Appellant asserts that this testimony had no probative value on the elements of the crime, and that it was inflammatory and of a prejudicial nature. The objection advanced in appellant's argument in the trial court was that the testimony was irrelevant.

We might well dispose of this point on the basis that appellant has cited no authority and has not made a convincing argument on this point. See *Dixon* v. *State*, 260 Ark. 857, 545 S.W. 2d 606. It also appears that appellant has broadened the scope of his objection on appeal. We have treated

the question pertaining to whippings under another point appellant has asserted. The argument relating to the actions of Mrs. Kitchen with reference to sperm on her daughter's vagina does not appear to be within the scope of appellant's motion. It is true that the offense with which appellant was charged required penetration of a body cavity with a penis. We simply cannot follow appellant's argument that evidence pertaining to ejaculation was not of probative value on the question of penetration, which, as he points out, was an important element in each of the three charges against him. All elements of the charges were put in issue by appellant's plea of not guilty. Relevant evidence is evidence having *any* tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. Stat. Ann. § 28-1001, Rule 401. It should require no elaboration to illustrate the relevance of this testimony. Appellant argues, in effect, however, that the testimony should have been excluded because the danger of unfair prejudice to him outweighed its probative value. Ark. Stat. Ann. § 28-1001, Rule 403. This called for a balancing test by the trial court. The test calls for the exercise of a sound judicial discretion by the trial court, which will not be disturbed by this court in the absence of clear abuse. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W. 2d 342. We find no abuse of discretion in this regard.

We should also point out that there is no reversible error in the denial of a motion in limine where the motion is vague and indefinite. *Bridges* v. *City of Richardson*, 349 S.W. 2d 644 (Tex. Civ. App. 1961). It is properly used to prohibit mention of some specific matter, perhaps of an inflammatory nature, until its admissibility has been shown out of the hearing of the jury. *Lewis* v. *Buena Vista Mutual Insurance Association*, 183 N.W. 2d 198 (Iowa, 1971).

Furthermore, as to those matters specified in appellant's motion in limine, appellant is in no position to claim prejudice. B testified that appellant put his penis in her mouth on two occasions. She did not mention any occasion on which his "penis did not go in." Furthermore, she said that he had ejaculated in her mouth on both occasions. She made no reference to any of her testimony at the first trial. Although

appellant's abstract does not reveal it, the state has called our attention to the fact that this testimony was first brought out on appellant's cross-examination with reference to B's testimony at the first trial. The identical situation exists as to the anticipated testimony of C that appellant rubbed his penis on her vagina.

### III

It is not possible for us to deal with this point as appellant would have us do for several reasons. Appellant says that the point must be considered by looking at the total transcript of the trial. This we will not do. Time and again we have pointed out the impossibility of seven judges reading the transcript of a trial. *Tucker* v. *Haskins*, 243 Ark. 826, 422 S.W. 2d 696. The record on appeal is confined to that which is abstracted. *Jones* v. *Reed*, 267 Ark. 237, 590 S.W. 2d 6. The mere scattering of transcript references throughout appellant's argument is not a substitute for a proper abstract. No longer can the appellant in a criminal case depend upon the Attorney General to abstract the record or supply deficiencies. See Rule 11 (f), Rules of Supreme Court and Court of Appeals, Vol. 3A, Ark. Stat. Ann. (Repl. 1979). Only in cases in which the sentence is life imprisonment or death do we review the record for prejudicial error. See *Bly* v. *State*, 263 Ark. 138, 562 S.W. 2d 605; *Hulsey* v. *State*, 261 Ark. 449, 549 S.W. 2d 73; Ark. Stat. Ann. § 43-2725 (Repl. 1977); Rule 36.24, Arkansas Rules of Criminal Procedure, Vol. 4A, Ark. Stat. Ann. (Repl. 1977). Even then we search only for rulings on objections and motions which were adverse to the appellant. See *Shepherd* v. *State*, 270 Ark. 457, 605 S.W. 2d 414 (1980); *Hulsey* v. *State*, 268 Ark. 312, 595 S.W. 2d 935; *Jenkins* v. *State*, 222 Ark. 511, 261 S.W. 2d 784.

Even though appellant recites an example or two of the conduct of the trial judge of which he now complains, none of them are such as to call for reversal and appellant frankly states that no one specific comment of the trial judge directed to defense counsel or to the testimony should cause reversal. We certainly agree with appellant that the trial judge should manifest impartiality in the conduct of a trial and refrain from impatient remarks or comments which tend to result

prejudicially to a litigant or to influence the minds of the jury. *Western Coal & Mining Co.* v. *Kranc*, 193 Ark. 426, 100 S.W. 2d 676. We also recognize that it is improper for a trial judge to needlessly inject himself into a trial. See *St. Louis Southwestern Ry. Co.* v. *Aydelott*, 128 Ark. 479, 194 S.W. 873. On the other hand, the judge is not merely the chairman of the trial, who must remain mute until a party calls upon him to make a ruling; instead, he has some responsibility for the proper conduct of the trial and the achievement of justice. *Jordan* v. *Guinn*, 253 Ark. 315, 485 S.W. 2d 715. It is the duty of the trial judge to see not only that the trial proceeds in accordance with law but that it proceeds efficiently and effectively and in keeping with the ends of justice. He should be free to shut off long-winded and irrelevant testimony or questioning and to confine counsel to the actual issues in the case. *Fuller* v. *State*, 217 Ark. 679, 232 S.W. 2d 988. It is the responsibility of the trial judge to maintain an appropriate balance in the performance of his role impartially and a clear transgression of the proper bounds must be demonstrated before an appellate court is justified in reversing a judgment because of the trial judge's interjecting himself into the trial.

Not only has appellant failed to demonstrate impropriety on the part of the trial judge, the issue is first raised on appeal. Appellant has not called our attention to any objection or motion for mistrial made in the trial court. In the absence of either, or of any corrective action, we do not consider an assertion of error such as this. *Kimble* v. *State*, 246 Ark. 407, 438 S.W. 2d 705; *Tarkington* v. *State*, 250 Ark. 972, 469 S.W. 2d 93.

## IV

Appellant recognizes that it is well settled that the verdict of a jury will not be disturbed on appeal, unless we can say there was no substantial evidence to support it. See *Pope* v. *State*, 262 Ark. 476, 557 S.W. 2d 887. Appellant points out that his wife and her three daughters had each admitted statements denying the truth of the accusations against him, that there was no corroboration by medical evidence of any sperm or physical evidence, that the crimes had not been reported for a matter of weeks, and that some of these

witnesses had visited appellant in prison and some of them had written letters expressing affection for appellant. These arguments were undoubtedly addressed to the jury and appropriately so. Appellant says that the extent of the inconsistencies and the total lack of corroboration of these witnesses require that this court rule that the verdict was not supported by the weight of the evidence. We are not concerned with the prepondernace of the evidence; that was a concern of the jury. *McCree v. State*, 266 Ark. 465, 585 S.W. 2d 938. We do consider that there was substantial evidence to support the verdict. No corroboration of the testimony of the victims was required. *Nowlin v. State*, 252 Ark. 870, 481 S.W. 2d 320; *Nowlin v. State*, 253 Ark. 57, 484 S.W. 2d 339; *Rogers v. State*, 237 Ark. 437, 373 S.W. 2d 705; *Stevens v. State*, 231 Ark. 734, 332 S.W. 2d 482; *Hawkins v. State*, 223 Ark. 519, 267 S.W. 2d 1. The testimony of the three girls was corroborated by their mother. The matters emphasized by appellant bear upon the credibility of the witnesses. *Rose v. State*, 122 Ark. 509, 184 S.W. 60. This was a matter for the jury's consideration. *Barnes v. State*, 258 Ark. 565, 528 S.W. 2d 370; *Kitchen v. State*, 264 Ark. 579, 572 S.W. 2d 839. This court is bound by the jury's conclusion on the credibility of witnesses. *Thomas v. State*, 266 Ark. 162, 583 S.W. 2d 32. It does not matter that a witness is uncorroborated and that testimony to impeach him has been introduced. *Blumenthal v. State*, 134 Ark. 605, 135 Ark. 617, 204 S.W. 602. We have no right to disregard the testimony of a witness after the jury has given it full credence, at least where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Barnes v. State*, 258 Ark. 565, 528 S.W. 2d 370.

The judgment is reversed and the cause remanded.