Chester WARREN *v.* STATE of Arkansas

CR 80-210                                        613 S.W. 2d 97

Supreme Court of Arkansas
Opinion delivered March 23, 1981

*Ernie Witt* and *Tom Donovan*, for appellant.

*Steve Clark*, Atty. Gen., by: *C. R. McNair, III,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant Chester Warren was convicted of terroristic threatening, a class D felony. The facts are basically undisputed. Troyce Jones, a county employee, and Billy Workman, a passenger, were in the process of grading a road in Yell County, when the appellant came out of some adjoining woods armed with a rifle. The men continued grading until appellant insisted they stop. When both men got down from the grader, appellant pointed his rifle at them and threatened to shoot one of them, Billy Workman. They did get back on the grader without any shots being fired and continued to grade the road. However, appellant threatened to shoot at the grader if they did not raise the blade. Apparently he was under the impression that the grader was on his land alongside the road and the road was not a county one but a private road running through his property.

We have taken jurisdiction in this case to interpret and construe Ark. Stat. Ann. § 41-1608 (Repl. 1977), the terroristic threatening statute. Appellant makes the novel argument that the facts proven might constitute an assault, but not terroristic threatening. His reasoning, based on the comments to the Arkansas Criminal Code, is as follows: Assaults are traditional offenses and involve risks of (1) death, (2) serious physical injury, (3) physical injury and (4) purposeful creation of apprehension of imminent physical harm. Terroristic threatening is a new statutory offense and is designed to protect against fear of safety where the apprehension arises from conduct not punishable as assaultive because imminent injury is not threatened. That is, terroristic threatening involves conduct causing a prolonged state of fear, while an assault does not have this protracted impact. For example, Ark. Stat. Ann. § 41-1607 (Repl. 1977) provides: "A person commits assault in the third degree if he

purposely creates apprehension of imminent physical injury in another person."

Appellant acknowledges that the assault, or imminent injury statute is only a misdemeanor statute, while the terroristic threatening provision is a felony statute.

The statute involved, Ark. Stat. Ann. § 41-1608 (Repl. 1977) is as follows:

> Terroristic threatening. — (1) A person commits the offense of terroristic threatening if with the purpose [of] terrorizing another person he threatens to cause death or serious physical injury or substantial property damage to another person.
> (2) Terroristic threatening is a class D felony. [Acts of 1975, No. 280, § 1608, p. 500.]

While we strictly construe a penal statute, we find no language which requires terrorizing over a prolonged period of time.

We use three well settled rules of review in determining whether the evidence is sufficient to sustain the finding of guilt. We view the evidence in a light most favorable to the appellee, the State here. *Milburn* v. *State*, 262 Ark. 267, 555 S.W. 2d 946 (1977). The jury's finding of guilt will be upheld if there is any substantial evidence to support it. *McCree* v. *State*, 266 Ark. 465, 585 S.W. 2d 938 (1979). It is not the function of an appellate court to weigh evidence or judge the credibility of witnesses; that is the function of the jury. *Barnes* v. *State*, 258 Ark. 565, 528 S.W. 2d 370 (1975). There is substantial evidence that appellant, while armed with a rifle, threatened to shoot both prosecuting witnesses, and intended to cause, and did cause, both of them to fear for their lives.

The jury made its finding and there is substantial evidence to support it.

The assault statutes and the terroristic threatening statute overlap and we do not consider the issue other than

to state that in *Cromwell* v. *State*,269 Ark. 104, 598 S.W. 2d 733 (1980) and *Wilson* v. *State*, 271 Ark. 682, 611 S.W. 2d 739 (1981), we noted that the mere overlapping of statutory provisions does not render a statute unconstitutional.

In this second assignment of error, appellant contends that a remark made by the trial judge in the presence of the jury constituted a comment on the evidence requiring reversal. We disagree.

Prior to trial, the court entered a discovery order requiring disclosure of any defense to be used at trial. The defendant did not respond. At trial one of the defense attorneys began to ask a series of questions going to the legal status of the road on which the incident occurred. The trial judge, not knowing appellant's defense, after an objection, questioned relevancy of this testimony. A colloquy occurred between counsel and the attorneys for both sides. Finally, the judge stated:

What's puzzling me is what difference does it make? I don't think it's relevant is what I am saying.

An in-chambers conference followed and appellant's attorney was then allowed to pursue the line of inquiry.

Article 7, § 23 of our constitution states that judges shall not "charge juries with regard to matters of fact" and so precludes them from commenting on the evidence. The judge is not to influence the jury with regard to the credibility of witnesses or the weight to be given their testimony. The prohibition applies not only to charges, but to colloquys with lawyers in the jury's hearing. *Fuller* v. *State*, 217 Ark. 679, 232 S.W. 2d 988 (1950). Clearly, if this inquiry into relevance could influence the jury in any manner, the case must be reversed, but since the appellant was allowed to pursue the line of questioning after the inquiry, we can see no possible inference on credibility, weight to be given, or any other matter. We hold the questioning into relevancy did not amount to a comment on the evidence.

Appellant contends that the trial judge was unmerited in the rebuke of a witness. The point was not preserved with an objection, and no authority is cited. Therefore, we do not consider the point. *Wicks* v. *State*, 270 Ark. 781, 606 S.W. 2d 366 (1980).

Appellant makes three additional assignments of error which relate to evidentiary rulings. We find no reversible error in those rulings and we find no principles of law or statutory interpretation which necessitate discussion.

However, it is necessary to state why this majority opinion does not consider two issues that are mentioned in the dissenting opinion: the reaction of the trial judge to the bickering of the attorneys and the form of the verdict rendered by the jury. The reason is because there were no objections to either of these issues below and no argument has been made on either issue here. As a result, there has been no adversary representation of both sides.

The importance of an adversary procedure is illustrated by the alleged error in the form of the verdict discussed in the dissent. We do not know what instructions were given with regard to the verdict, nor do we know what forms of verdict were given to the jury. We do not know whether there was a verdict for finding the appellant guilty or not guilty of terroristic threatening. We also do not know what appellant was found guilty of — we only know the fine was in the amount of $500. We know that the attorneys for the appellant chose, perhaps as a carefully considered matter of trial strategy, not to object and not to abstract or argue the matter on appeal. The majority feel that it would amount to speculation if we consider the issue under these circumstances; the same reasoning applies to the other non-preserved and unargued issue.

The case of *Wicks* v. *State*, 270 Ark. 781 at 785, 606 S.W. 2d 366 (1980) contains a clear and complete description of our rule that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court. We expressly rejected the "plain error" rule in that case and these issues do not fall within one of the enumerated

exceptions to our rule. See *Wicks,* supra. We do not intend to deviate from our policy concerning non-preserved issues; thus, we did not consider the aforementioned issues.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. In order to understand the case I think we should set out Ark. Stat. Ann. § 41-1607 (1) (Repl. 1977), which states:

A person commits assault in the third degree if he purposely creates apprehension of imminent physical injury in another person.

The statute immediately following is Ark. Stat. Ann. § 41-1608 (1) (Repl. 1977), which reads:

A person commits the offense of terroristic threatening if with the purpose (of) terrorizing another person he threatens to cause death or serious physical injury or substantial property damage to another person.

The commentary following § 41-1608 states:

Terroristic threatening is a new offense encompassing conduct dealt with ineffectively by prior law. Several considerations led the Commission to deal with the conduct proscribed as a separate offense. First, the section is designed to reach efforts to terrorize another by conduct not punishable as assaultive because apprehension of imminent injury is not required. The extreme nature of the harm threatened also distinguishes this kind of behavior from that proscribed by § 41-1607 and led to treatment of the conduct as a discrete crime.

It is at once obvious that terroristic threatening is a separate classification of offenses which was inserted into the statutes after the statute for assault in the third degree had been perfected. If it were intended that terroristic

threatening include the exact same acts as assault in the third degree, it would have, of course, been unnecessary to include them under separate offenses. Therefore, it seems clear that the legislature intended that terroristic threatening be a separate and distinct activity from that used to describe assault in the third degree.

The terroristic threatening statute is not descriptive of an assaultive offense. On the other hand, the assault statute clearly indicates apprehension of imminent physical injury. Certainly, there was a period of a few minutes in the present case when the prosecuting witnesses may have been under the apprehension they would be immediately assaulted. The record is absolutely void of any indication that the prosecuting witnesses considered the incident to be of a lasting duration.

It seems to me that the assault statutes were clearly intended for cases which were over and complete in a matter of a short period of time. On the other hand, terroristic threatening surely intended to cover such cases as threats by telephone or mail or continuing conduct to cause the other party to be terrorized. If in the present case the appellant had said, "I am going to shoot you now," it would have been an assault. If he had said, "Even though I'm not going to shoot you now, I'm going to get you at some time down the line," then, in my opinion, he would have been guilty of terroristic threatening.

It is regrettable but the record indicates attorneys on both sides were antagonistic toward each other. This creates an intolerable position for the trial judge and often leads to actions which would not otherwise be taken. On several occasions the conflict between the attorneys became so apparent that the court went into chambers to cool them down. At times the conduct of the attorneys was almost uncontrolled. All of this tended to force the judge to frequently intervene with the proceedings. No doubt, this left the jury in a condition where they could not freely concentrate on the facts of the case. The position of a trial judge is not an easy one and a good description of his function at a jury trial is found in *Fuller* v. *State*, 217 Ark.

679, 232 S.W. 2d 988 (1950), where Justice Leflar stated:

> A Circuit Judge presiding at a jury trial should not be a mere automaton on the bench, exerting no control over what goes on before him. He should be more than a moderator who keeps order while counsel do and say what they please before the jury. It is his duty to see not only that the trial proceeds in accordance with law, but that it proceeds efficiently and effectively, and in keeping with the ends of justice. He should, among other things, be free to shut off long-winded and irrelevant testimony or questioning, and to confine counsel to the actual issues in the case being tried. The firm and fair administration of the trial is a part of his job.

No doubt, the court became irritated on several occasions, one in particular which comes to mind when the court addressed an attorney as follows:

> Mr. Witt, you will do two things if you want to continue this trial. You will quit waving that pencil in my face and you'll get behind the podium. *** You will not unduly repeat questions. We all have limits to our time including me, you, the jury, everyone. You are unduly repetitious.

Still a little further the court was obviously a little vexed at a time when the motion of the state was sustained on certain testimony relating to hearsay. The appellant was listening to the dialogue between the attorneys and the court, about the hearsay rule, interrupted and said:

> THE WITNESS: That's not hearsay. The man was right in front of me.
>
> THE COURT: The witness will remain silent until his attorney or the court asks him a question. This is the second time, sir.
>
> THE WITNESS: Sorry, Your Honor.

THE COURT: Sir, you will remain silent until your attorney —

THE WITNESS: Yes, sir.

THE COURT: Sir, you will remain silent.

THE WITNESS: Thank you.

THE COURT: I'm not going to tell you a fourth time. All right?

There appears to have been a considerable dispute as to whether the road in question here was a public road or a private road. The court made a statement before the jury which was objected to by the appellant. The court's statement was:

What's puzzling me is what difference does it make? I don't think it's relevant is what I'm saying.

The court may have been entirely correct in the statement but the setting in which it was made no doubt had some impression on the jury. In other words, it probably caused the jury to think the appellant was making a lot to do about something which had no bearing on the trial. The truth of the matter is that if the road had been private and the property of the appellant, he very well may have had the right to do exactly what he did. I think it was relevant to show the condition of appellant's mind at the time.

There had obviously been several other lawsuits involving the parties and the subject matter of the road. The present attorneys had represented different parties in some of those actions. Appellant's attorney attempted to show that a state's attorney represented the wife of one of the prosecuting witnesses in one of the former court cases. The trial court sustained the state's objection on the ground that the former suit was immaterial. After a considerable amount of bickering the court had to take the attorneys into chambers again. At the in-chambers hearing the appellant moved for a mistrial which was denied.

There are so many objections that it is hard to read the record. It is no wonder the court became edgy under the circumstances. It seems to me from a totality of the circumstances in this case the jury most likely got the impression that appellant's attorney was guilty of misconduct and that the court may have been favoring the state's version of the facts. Therefore, upon consideration of all of the incidents, none of which would have been prejudicial in themselves, I think the case should be returned for another trial.

From the record I am unable to determine whether the jury returned a verdict of guilty against the appellant. The only quotation from the jury is found within the judgment and it simply states:

We, the jury, assess a fine in the amount of $500.

The above statement was signed by the foreman, but there is no indication that the jury found the appellant guilty of terroristic threatening. From the attempt to assess punishment as a fine, it would appear the jury attempted to levy a misdemeanor punishment upon the appellant.

I would reverse and remand for a new trial.